Ashton Joel CARMEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–10–00124–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 30, 2011.

Discretionary Review Refused
April 4, 2012.

John J. Davis, Angleton, TX, for Appellant.

David Bosserman, Assistant Criminal District Attorney, Angleton, TX, for State.

Panel consists of Justices KEYES, HIGLEY, and YATES.*

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Ashton Joel Carmen, appeals a judgment convicting him for the murder of his father, Reginald Carmen. *See* TEX. PENAL CODE ANN. § 19.02 (West 2003).

---

* The Honorable Leslie Brock Yates, former Justice of the Fourteenth Court of Appeals, participating by assignment.

Appellant pleaded not guilty before the jury. The jury found appellant guilty of murder, returned a negative finding on the special issue of sudden passion, and assessed his punishment at life confinement in the institutional division of the Texas Department of Criminal Justice and a $5,000 fine. In three issues, appellant contends that (1) the trial court erred by admitting photographs and a video recording made during a walkthrough of appellant's father's house, (2) his trial counsel rendered ineffective assistance by failing to timely and properly object to the admission of physical evidence seized from the house, and (3) the trial court erred by overruling his objection to the State's argument on punishment that "if [appellant] kills again, that is on you." We conclude that the trial court properly admitted the evidence, that appellant's trial counsel was not ineffective, and that the trial court properly overruled appellant's objection to the State's argument on punishment. We affirm.

## Background

Appellant was born prematurely to a mother who had used crack cocaine during her pregnancy. Although he initially lived with his mother, who continued to use cocaine, appellant's maternal grandmother was his primary caretaker. When he was about six years old, appellant went to live with his father.

The next year, appellant's father whipped appellant with a belt, causing bruising on the side of appellant's body. After a teacher discovered the bruises, appellant was taken to the hospital. Child Protective Services removed appellant from his father's custody and placed him with his mother. Six months later, after appellant's father had completed anger management classes, appellant returned to live with his father.

In the years before his father's death, appellant's behavior and grades in school deteriorated. His father, being a strict disciplinarian, meted out punishments, which included whipping appellant with a belt and prohibiting him from seeing his friends. Appellant attempted to run away numerous times. Less than a month before his father's death, a juvenile court placed appellant on probation for truancy subject to certain conditions, including a requirement that he attend school every day.

On December 8, 2005, appellant returned to his father's house after school. His father's bedroom, the master bedroom, was located on the ground floor of the house. The door to the master bedroom was locked. Appellant went into the backyard and removed a screen covering a window to the master bedroom. He broke the glass and entered through the window. Appellant located a locked suitcase containing several thousand dollars cash and a .40-caliber SIG Sauer semi-automatic pistol. Taking the suitcase with him, appellant exited the room and went upstairs. Using a hammer, appellant forced the suitcase open, and he removed about $2,000 dollars and the pistol. After his father arrived home, appellant fired multiple gunshot rounds from the pistol at his father, killing him. Appellant placed a bandana over his father's face, took a shower upstairs, and then left in his father's car.

After appellant's father failed to show up to work the next morning, Friday, December 9, 2005, his employer contacted the police. The employer provided the police with appellant's father's address and a description of his car, a black Lexus. Officers DeSilvia and Herrera of the Pearland Police Department were dispatched to the house, arriving around 9:30 a.m. Officer DeSilvia knocked on the door and rang the doorbell but received no response. The

front door was locked. The officers looked through a window above the door and saw a man lying on his back, not moving, with something covering his face.

Officer Herrera kicked the door open, setting off the security alarm. The officers discovered that the man lying on the floor—appellant's father—was deceased; his body was slightly stiff with rigor mortis, and he did not have shoes on his feet. Near the body lay spent shell casings and live rounds of ammunition. Officer Herrera walked from the foyer through the laundry room into the garage. The garage door was closed, and the black Lexus was missing.

After other officers arrived, Officers DeSilvia and Herrera searched the rest of the house, looking for other victims and suspects. On the dining-room table, they found a can of roach spray, a knife, a golf club, an open bottle of Dr. Pepper, and an earplug. Finding the door to the master bedroom locked, they proceeded upstairs. On the stairs, they found a spent shell casing. In appellant's bedroom, they found an earplug package matching the earplug found in the dining room. After checking the upstairs, they returned to the locked master bedroom door, which Officer DeSilvia kicked open. The room was very messy; some of the dresser drawers had been emptied out. On the floor lay an Airsoft gun resembling a small machine gun. After searching the house, Officer DeSilvia secured the premises and stood in front of the house to ensure that only authorized persons entered the property.

Officer Bort, a crime scene investigator, arrived about 30 minutes after Officers DeSilvia and Herrera. In the backyard, Officer Bort saw the screen and glass from the broken window. He then conducted a walkthrough of the house. In the foyer, he saw a black glove, a hat, a bag of groceries, and some mail near the body.

He also saw bullet holes in the walls. In the laundry room, he saw the appellant's father's shoes. In the kitchen, he saw a box of ammunition next to a SIG Sauer owner's manual. He also saw a little napkin with what appeared to be a bloodstain. Upstairs, he saw a Nike glove package on a ledge overlooking the foyer. In the entertainment room, he saw a briefcase, which appeared to have been forced open with a nearby hammer. He also saw a Lexus manual and a SIG Sauer magazine. Officer Bort recorded a video of his walkthrough and took photographs of the items he observed.

That same morning, the general manager of a hotel in Texas City discovered in the parking lot an unidentified black Lexus, which was missing a front tire. Later that morning, the manager noticed that the Lexus had been moved to a nearby Sears parking lot. The manager called the police, who informed her that the car had been involved in a crime. The manager contacted Sears and discovered that Sears employees were fixing the car's tire. The manager told the Sears employees to work slowly because the police were en route. When Texas City police arrived, they found both appellant and his father's car.

Officer Hunt of the Pearland Police Department was the detective assigned to investigate the death of appellant's father. He telephoned appellant's school and learned that appellant was absent. He then contacted appellant's probation officer, who drafted a directive to apprehend based on appellant's violation of the conditions of his probation. After learning that the Texas City police had found appellant and the car, Officer Hunt went to the Sears parking lot. Shortly before 11:00 a.m., Texas City police took appellant into custody pursuant to a directive to apprehend. In the Sears parking lot, Officer Hunt observed a pistol in plain view on the

floorboard of the back seat of the Lexus; however, he did not seize the pistol at that time. Both appellant and the car were transported back to Brazoria County.

Around 1:30 p.m., a magistrate judge read appellant his rights outside the presence of law enforcement personnel. After waiving his rights, appellant gave an oral statement to police, in which he admitted killing his father. Appellant stated that he was having some problems with gang members from school and that he had heard that they were going to come over to his house. He accordingly took the weapon to protect himself. Appellant claimed that he shot his father because he had mistaken him for a gang member. Within an hour, appellant disavowed this statement.

Appellant reduced his second story to a written statement. He stated that his parents had engaged in an argument about his mother's picking him up early from school and that his father had told her that he was going to impose corporal punishment on appellant sometime soon. Appellant claimed that this brought back memories of an incident seven years before in which his father's punishment resulted in appellant's hospitalization.

Shortly before 4:30 p.m. that same afternoon, December 9, the police obtained search-and-seizure warrants for appellant's father's house and car. From the house, Officer Bort seized the items that he had observed and documented during his walkthrough. From the car, he seized the pistol, which Officer Hunt had previously seen in plain view.

Before trial, appellant's counsel filed two motions to suppress. In the first motion to suppress, appellant's counsel contended that the police illegally arrested appellant without a valid warrant, probable cause, or reasonable suspicion. The first motion sought to suppress (1) evidence seized as a result of appellant's arrest, (2) evidence seized as a result of the search of appellant's person, papers, and effects, and (3) any written or oral statements that appellant made after his arrest. In the second motion to suppress, appellant's counsel contended that the police had illegally arrested appellant without a valid warrant or authority to arrest without a warrant and that they had illegally detained appellant because they intensively questioned him before taking him to see a magistrate; no lawful commitment or capias had been issued; no arrest warrant had been issued; and the complaint against appellant was legally defective. Appellant's counsel further contended that the police, without authority, made promises to appellant to induce him to sign his written confession and that appellant was not properly *Mirandized.* The second motion sought to suppress (1) any written or oral confession that appellant made at the time of his arrest or during his subsequent detention, (2) any evidence obtained as a result of any statement that appellant made at the time of his arrest or during his subsequent detention, and (3) any evidence obtained by a search of appellant or appellant's premises without proper search warrant.

At the pre-trial hearing on the motions to suppress, appellant's counsel argued that the recording of appellant's oral statement should be excluded because the magistrate failed to make a determination of voluntariness, reduce it to writing, sign it, and date it. Appellant's counsel also argued that an interruption during appellant's interview made the entire written statement inadmissible and that appellant never waived his rights voluntarily, intelligently, or knowingly. The trial court found that appellant was properly warned of his rights, understood his rights, and provided his statement to the police freely and voluntarily. The trial court also found

that the police properly searched appellant's person, papers, and effects and that evidence was properly seized as a result of that search. The trial court accordingly denied both motions.

At a subsequent pre-trial hearing, the State offered into evidence a copy of the warrant to search appellant's residence and a copy of the supporting affidavit for the purpose of establishing that the State had obtained a valid search warrant and performed a valid search. Appellant's counsel objected on the ground that the State must produce the original warrant. The court overruled this objection.

During the guilt—innocence phase of trial, Officer Bort testified to what he observed during his walkthrough of the house, which occurred after the house had been secured but before the search-and-seizure warrant had been issued. Appellant's counsel did not object to Officer Bort's testimony describing his observations. The State introduced the photographs and video recording made during the walkthrough. Appellant's counsel objected that the photographs and video recording were the product of an unreasonable search and seizure. The trial court overruled these objections. The State then introduced the items seized from the house. Appellant's counsel objected based on the fact the supporting affidavit was a copy and not an original document. Appellant's counsel did not object to the admission of the items seized on the grounds that they were the product of an unreasonable search and seizure.

After the guilt—innocence phase of trial, the jury returned a verdict of guilty. The trial then proceeded to the punishment phase. During closing arguments, the State argued, "Listen, you know he killed once. That's not on you. To a degree, if he kills again, that is on you." Appellant's counsel objected on the ground that this comment went beyond a proper plea for law enforcement by making the jury individually and personally responsible for the acts of appellant. The trial court overruled the objection.

The jury found against appellant by a preponderance of the evidence on the special issue of whether appellant had acted under the immediate influence of a sudden passion arising from adequate cause. It assessed appellant's punishment at life imprisonment and a $5,000 fine.

### Admission of Photographs and Video of Pre–Warrant Walkthrough

In his first issue, appellant contends that the trial court erred by admitting photographs and a video recording made when Officer Bort conducted a walkthrough of the interior of appellant's father's house because they were made prior to the officers' obtaining a search warrant and were the product of an unreasonable search and seizure.

#### A. Standard of Review

■ We review the admission of evidence by the trial court for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App.2005). So long as the trial court's decision is within the zone of reasonable disagreement, we will not disturb it on appeal. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim. App.1991).

#### B. Applicable Law

■ The Fourth Amendment guarantees the right of individuals to be "secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search by police is presumptively unreasonable. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex.Crim.App.2007) (citing *Payton v. New York*, 445 U.S. 573, 586,

100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). However, the warrant requirement may be set aside when the State shows that exigent circumstances existed at the time of the warrantless search. *Id.* The State bears the burden to prove that such exigent circumstances existed through a two-step process. *Id.* First, the police must have probable cause to enter or search a specific location. *Id.* Second, the exigent circumstance must require the police to make an immediate warrantless entry to a particular place. *Id.*

■ Our jurisprudence recognizes three exigent circumstances that justify an immediate warrantless entry by police officers. *Id.* The first exigent circumstance is when the police must provide assistance to persons whom the police reasonably believe are in need of assistance. *Id.* The second exigent circumstance is when the police need to protect themselves from persons whom the police reasonably believe to be present, armed, and dangerous. *Id.* The third exigent circumstance is when the police attempt to prevent destruction of evidence or contraband. *Id.*

■ Under the "fruit of the poisonous tree" doctrine, evidence may not be used against a criminal defendant if it was obtained by exploitation of an illegal search or seizure and not by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun v. United States,* 371 U.S. 471, 484, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *Thornton v. State,* 145 S.W.3d 228, 232 (Tex.Crim.App.2004); *see also* TEX.CODE CRIM. PROC. art. 38.23(a) (West 2005) ("No evidence obtained . . . in violation of . . . the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

■ The plain-view doctrine is more than a mere exception to the warrant requirement of the Fourth Amendment. *Walter v. State,* 28 S.W.3d 538, 541 (Tex. Crim.App.2000) (citing *Texas v. Brown,* 460 U.S. 730, 738–39, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983)). Because the article is already in plain view, neither its observation nor its seizure involves any invasion of privacy. *Id.* To satisfy the requirements of a plain-view analysis of obtained evidence, however, the police must meet two requirements. *Id.* First, the police must have a right to be in the location where the article is in plain view. *Id.* Second, the article found in plain view must be evidence that leads the police to have the immediately apparent belief that the article may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* (citing *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990)).

■ Where officers are privileged under the plain-view doctrine to observe or seize an article, they are likewise privileged to take a photograph or make a video recording of that article. *See Gordon v. State,* 640 S.W.2d 743, 754 (Tex.App.-San Antonio 1982) (photographs of homicide scene taken during course of search pursuant to warrant were not inadmissible on ground that photographs were not enumerated in article 18.02; since search was valid, officers did not exceed scope of warrant in making photographs of what was plainly visible for preservation of evidence); *Chase v. State,* 508 S.W.2d 605, 611 (Tex. Crim.App.1974) (police officers did not go beyond scope of warrant by taking photographs of plyboard used in murder where officers were lawfully on the premises and taking of photographs did not constitute search and seizure); *Tocher v. State,* 501 S.W.2d 921, 925 (Tex.Crim.App.1973) (photographs of murder scene taken by officers

who were on scene during execution of valid search warrant depicted only what was in plain view and did not constitute search and seizure).

### C. Analysis

Appellant concedes that Officers DeSilvia and Herrera properly searched the house pursuant to their community caretaking duty and that, under the plain-view doctrine, they could have seized outright any of the evidence photographed or videotaped. However, he contends that, once they secured the scene, after determining that there were no other victims or suspects on the premises, the exigencies that had justified the warrantless search came to an end. Accordingly, appellant reasons that Officer Bort's subsequent walkthrough constituted an unreasonable, warrantless search, of which the photographs and the video were products. Appellant does not argue that Officer Bort's search was any more expansive or intrusive than the permissible search already conducted by Officers DeSilvia and Herrera.

■ We agree with appellant that the exigencies that justified the initial warrantless search had ended before Officer Bort's search began. The question, therefore, is whether a subsequent search that is no more intrusive or expansive than the initial search is unreasonable merely because the exigencies have ended. "[O]nce the privacy of a residence has lawfully been invaded during an exigency, it makes no sense to require a warrant for other officers to enter and complete what officers on the scene could have properly done." *Johnson v. State,* 161 S.W.3d 176, 183 (Tex.App.-Texarkana 2005), *aff'd on other grounds,* 226 S.W.3d 439, 445 (Tex. Crim.App.2007) ("Although the officers in the present case may have gone in and out of the door three times during their initial investigation, the lawfulness of a search is not determined by the number of times

that officers cross the threshold."); *see also Rothstein v. State,* 267 S.W.3d 366, 375–76 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd) (holding that subsequent entry to view contraband already seen in plain view during initial search was "incidental to and a valid continuation of the initial exigent circumstances search") (citing *Shoaf v. State,* 706 S.W.2d 170, 175 (Tex.App.-Fort Worth 1986, pet. ref'd) (picking up, tagging, and preserving items was administrative duty incidental to original entry)). Because the subsequent search merely documented what had already been observed in plain view during the initial, reasonable search, we conclude that trial court properly overruled appellant's objections.

Appellant's first issue is overruled.

## Ineffective Assistance of Counsel

In his second issue, appellant contends that his trial counsel rendered ineffective assistance by failing to lodge a timely and proper objection to the physical evidence seized from the interior of appellant's father's house through a motion to suppress or at trial.

### A. Standard of Review of Ineffective Assistance

To prevail on an ineffective-assistance-of-counsel claim, the appellant must demonstrate, by a preponderance of the evidence, that (1) his trial counsel's performance was deficient and (2) a reasonable probability exists that, but for the deficiency, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). Under the first prong of *Strickland,* the appellant must show that his counsel's performance fell below an objective standard of reasonableness, which does not require showing that counsel's representation was without

error. *Robertson v. State,* 187 S.W.3d 475, 483 (Tex.Crim.App.2006); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson,* 9 S.W.3d at 812. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and therefore the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S.Ct. at 2065; *Williams v. State,* 301 S.W.3d 675, 687 (Tex.Crim.App.2009). Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). To prevail, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim.App.2001); *see Thompson,* 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness). If the record is silent regarding the reasons for counsel's conduct—as it usually is on direct appeal—then the record is insufficient to overcome the presumption that counsel followed a legitimate trial strategy. *Tong v. State,* 25 S.W.3d 707, 714 (Tex.Crim.App.2000); *Thompson,* 9 S.W.3d at 813–14; *see also Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App. 2001) ("[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court ... will not con-

clude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.").

■ Even the failure to file a motion to suppress evidence is not per se ineffective assistance of counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986). "Counsel is not required to engage in the filing of futile motions." *Hollis v. State,* 219 S.W.3d 446, 456 (Tex.App.-Austin 2007, no pet.) (citing *Mooney v. State,* 817 S.W.2d 693, 698 (Tex.Crim.App.1991)). Rather, to prevail on an ineffective-assistance claim based on counsel's failure to file a motion to suppress, "an appellant must show by a preponderance of the evidence that the result of the proceeding would have been different—i.e., that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction." *Id.* (citing *Jackson v. State,* 973 S.W.2d 954, 956–57 (Tex.Crim.App.1998)). To meet this burden, the appellant must produce evidence that defeats the presumption of proper police conduct. *Id.* (citing *Jackson,* 973 S.W.2d at 957). The appellant must therefore develop facts and details of the search sufficient to conclude that the search is invalid. *Id.* (citing *Jackson,* 973 S.W.2d at 957). Simply contending that there "may be questions about the validity of the search" is not enough to support an ineffective-assistance claim based on counsel's failure to move to suppress evidence. *Jackson,* 973 S.W.2d at 957.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *McKissick v. State,* 209 S.W.3d 205, 211 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). We give almost total deference to the trial court's determination of historical facts that de-

pend on credibility, while we review de novo the trial court's application of the law to those facts. *Id.* Thus, we review de novo the trial court's application of the law of search and seizure and probable cause. *Id.* However, our review of an affidavit in support of a search warrant is not de novo; rather, great deference is given to the magistrate's determination of probable cause. *Id.*

### B. Validity of Search Warrant

Appellant contends that his trial counsel was ineffective by failing to properly object to the admission of the physical evidence seized from his father's home pursuant to the search warrant and obtain its suppression. Specifically, appellant contends that his counsel should have objected on the ground that the search warrant was an evidentiary search warrant that failed to state probable cause and failed to meet the requirements of an evidentiary search warrant.

 Article 18.01, subsection (b) of the Code of Criminal Procedure provides that no search warrant may issue unless supported by an affidavit setting forth substantial facts establishing probable cause for its issuance. Tex.Code Crim. Proc. Ann. arts. 1.06, 18.01(b) (West 2005 & Supp. 2009). "The test for determination of probable cause is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *McKissick,* 209 S.W.3d at 211 (citing *Illinois v. Gates,* 462 U.S. 213, 236–37, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). Probable cause exists when, under the totality of the circumstances, the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Id.* A reviewing court may consider only the facts found within the four corners of the affidavit when evaluating a complaint that a search warrant affidavit does not establish probable cause. *Id.* at 212. Reasonable inferences may be drawn from the affidavit, and the affidavit must be interpreted in a common sense and realistic manner. *Id.*

Article 18.02 of the Texas Code of Criminal Procedure sets forth 12 grounds for the issuance of search warrants:

A search warrant may be issued to search for and seize:

(1) property acquired by theft or in any other manner which makes its acquisition a penal offense;

(2) property specially designed, made, or adapted for or commonly used in the commission of an offense;

(3) arms and munitions kept or prepared for the purposes of insurrection or riot;

(4) weapons prohibited by the Penal Code;

(5) gambling devices or equipment, altered gambling equipment, or gambling paraphernalia;

(6) obscene materials kept or prepared for commercial distribution or exhibition, subject to the additional rules set forth by law;

(7) a drug, controlled substance, immediate precursor, chemical precursor, or other controlled substance property, including an apparatus or paraphernalia kept, prepared, or manufactured in violation of the laws of this state;

(8) any property the possession of which is prohibited by law;

(9) *implements or instruments* used in the commission of a crime;

(10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to

show that a particular person committed an offense;

(11) persons; or

(12) contraband subject to forfeiture under Chapter 59 of this code.

TEX.CODE CRIM. PROC. ANN. arts. 18.02. Other than subdivision (11), concerning persons, the other subdivisions concern the search and seizure of property. *See id.* Subdivisions (1) through (9) and (12) describe specific categories of property that may be searched and seized. *See id.* In contrast, subdivision (10) is a catchall ground that applies only if the other articles do not. *State v. Acosta*, 99 S.W.3d 301, 304 (Tex.App.-Corpus Christi 2003, pet. ref'd) (quoting *State v. Young*, 8 S.W.3d 695, 698 (Tex.App.-Fort Worth 1999, no pet.)). Property subject to seizure under section 18.02(10) is often referred to as "mere evidence." *Young*, 8 S.W.3d at 699; *Reeves v. State*, 969 S.W.2d 471, 482 (Tex.App.-Waco 1998, pet. ref'd). "Mere evidence is evidence connected with a crime, but does not consist of fruits, instrumentalities, or contraband." *Joseph v. State*, 807 S.W.2d 303, 307 (Tex.Crim. App.1991). Accordingly, a warrant issued under section 18.02(10) is known as an "evidentiary search warrant" or a "mere evidentiary search warrant." *Porath v. State*, 148 S.W.3d 402, 408 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Young*, 8 S.W.3d at 698.

A mere-evidentiary search warrant differs from a warrant issued under the other subdivisions in two pertinent respects. First, unlike warrants issued under subdivisions (1) through (9) and (12), a warrant may be issued under subdivision (10) only if accompanied by an affidavit setting forth sufficient facts to establish probable cause:

(1) that a specific offense has been committed,

(2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and

(3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX.CODE CRIM. PROC. ANN. art. 18.01(c). Second, although it is well established that the plain-view exception is available during searches conducted pursuant to warrants issued under the other subdivisions, "there is a split of authority regarding whether the 'plain view' exception is available when unnamed items are seized during the execution of an 'evidentiary search warrant' issued pursuant to [article 18.02(10) ]." *Zarychta v. State*, 44 S.W.3d 155, 167 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd); *see Joseph*, 807 S.W.2d at 307 & n. 4; *Young*, 8 S.W.3d at 699 (" 'plain view' evidence may be properly seized with respect to searches authorized by warrants issued under subsections (1) through (9) and (12) of article 18.02"). Some courts of appeals have held that, during a search conducted pursuant to a warrant issued under article 18.02(10), the police may seize only those items specifically described[1] in the search

---

1. "In determining whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *Porath v. State*, 148 S.W.3d 402, 410 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (citing *United States v. Layne*, 43 F.3d 127, 132 (5th Cir.1995)); *see also Uresti v. State*, 98 S.W.3d 321, 337 (Tex.App.-Houston [1st Dist.] 2003, no pet.) ("The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized.") (citing *Winkfield v. State*, 792 S.W.2d 727, 731 (Tex.App.-Corpus Christi 1990, pet. ref'd)).

warrant even if they discover additional items that would otherwise fall within the plain-view exception. *Young*, 8 S.W.3d at 699; *Scoggan v. State*, 736 S.W.2d 239, 243–45 (Tex.App.-Corpus Christi 1987), *rev'd on other grounds*, 799 S.W.2d 679 (Tex.Crim.App.1990); *see* TEX.CODE CRIM. PROC. ANN. art. 18.01(d) ("Only the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 of this code or property, items or contraband enumerated in Subdivisions (1) through (9) or in Subdivision (12) of Article 18.02 of this code may be seized."). *But see Bower v. State*, 769 S.W.2d 887, 906 (Tex.Crim.App.1989), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App. 1991).

### 1. Characterizing the Search Warrant

 Both the heightened probable-cause requirement in article 18.01(c) and the limitation on the plain-view doctrine apply only if a warrant is issued under article 18.02(10) and not under any of the other subdivisions of article 18.02. *See* TEX.CODE CRIM. PROC. ANN. art. 18.01(c); *Joseph*, 807 S.W.2d at 307 & n. 4; *Young*, 8 S.W.3d at 699. Therefore, we must, as a preliminary matter, characterize the warrant to search appellant's father's house.

 "[T]he classification of a warrant is an issue of law for the courts to decide." *Young*, 8 S.W.3d at 698. In determining which subdivision a warrant is classified under, an appellate court looks to the language of the warrant and the statements made in the affidavit; it is not bound by the title of the warrant or a police officer's later characterization of the warrant. *Acosta*, 99 S.W.3d at 305;

*Young*, 8 S.W.3d at 698. If a warrant authorizes a search for both "mere evidence" and items listed under another ground for search and seizure, the warrant is not a mere-evidentiary search warrant. *Zarychta*, 44 S.W.3d at 168; *Young*, 8 S.W.3d 695, 698–99.

Paragraph two of the affidavit supporting the search warrant for appellant's father's house states the ground for issuance as follows:

**THERE IS AT SAID SUSPECTED PLACE AND PREMISES PROPERTY OR ITEMS, ACCEPT [sic] THE PERSONAL WRITINGS BY THE ACCUSED, CONSTITUTING EVIDENCE OF AN OFFENSE OR CONSTITUTING EVIDENCE TENDING TO SHOW THAT A PARTICULAR PERSON COMMITTED AN OFFENSE AS FOLLOWS:**

Any object used in the commission of murder, any physical evidence relating to the crime of murder, any evidence that characterized the nature of the relationship between the [sic] Reginald Carmen and Ashton Carmen. Including the body of the deceased, shell casings, bullets, weapons, blood, hair, fibers, clothing, DNA, [or] electronically captured data from answering machine, computer, and alarm system.

Because it authorizes the search for and seizure of "[a]ny object used in the commission of [the] murder ... [i]ncluding ... shell casings, bullets, [and] weapons," the present warrant was issued pursuant to article 18.02(9), which authorizes the search for and seizure of "implements or instruments used in the commission of a crime...." TEX.CODE CRIM. PROC. ANN. art. 18.02(9). Because it was issued under arti-

---

"In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." *Porath*, 148 S.W.3d at 410; *see also*

*Uresti*, 98 S.W.3d at 337 ("A search warrant may be sufficient with only a generic description of items to be seized if a more specific description of the items is unavailable.").

cle 18.02(9), the present warrant was not issued under article 18.02(10), and it is therefore not a mere-evidentiary search warrant. *See Zarychta,* 44 S.W.3d at 168; *Young,* 8 S.W.3d at 698–99; *see also Acosta,* 99 S.W.3d at 304 (Article 18.02(10) "applies only when the other articles do not.") (quoting *Young,* 8 S.W.3d at 698).

### 2. Failure to Meet Heightened Probable–Cause Requirement

Appellant concedes that the affidavit sets forth facts sufficient to establish probable cause that a murder had been committed. *See* TEX.CODE CRIM. PROC. ANN. art. 18.01(c)(1). However, appellant contends that the affidavit fails to set forth facts to establish probable cause that hair, fibers, clothing, DNA, or electronically captured data from an answering machine, computer, or alarm system constitutes either evidence of the murder's occurrence or evidence that appellant in particular committed the murder. *See id.* art. 18.01(c)(2). Appellant also contends that the affidavit fails to set forth facts to establish probable cause that hair, fibers, clothing, DNA, or electronically captured data from an answering machine, computer, or alarm system were located at the address. *See id.* art. 18.01(c)(3).

■ However, because the present search warrant is not a mere-evidentiary search warrant, it is not subject to the heightened probable-cause requirement. *See* TEX.CODE CRIM. PROC. ANN. art. 18.01(c). Therefore, appellant's argument fails. Moreover, even if the heightened probable-cause requirement did apply and the affidavit and the warrant were inadequate as to these categories of evidence, appellant failed to show any resulting prejudice because no evidence within any of these categories was seized or offered against him at trial.

### 3. Seizure of Evidence Not Specified

■ Appellant contends that 25 items seized from his father's house were subject to suppression because they were not specifically described in the affidavit or warrant.[2] *See Young,* 8 S.W.3d at 699; *Scoggan,* 736 S.W.2d at 243–45. However, because the present search warrant is not a mere-evidentiary search warrant, it is not subject to the limitation on the plain-view doctrine. *See Joseph,* 807 S.W.2d at 307 & n. 4; *Young,* 8 S.W.3d at 699. Each of the 25 items was observed, and photographed, in plain view during Officer Bort's walkthrough, which, as we explained above, was permissible. Because these items fell within the plain-view warrant exception, we conclude that appellant's proposed objection is without merit. *See Walter,* 28 S.W.3d at 541. We conclude that appellant's trial counsel was not

**2.** The 25 items are: (1) an earplug found on the dining-room table; (2) a hammer in a brown paper bag; (3) a two-liter bottle of Dr. Pepper; (4) can of Bengal Roach Spray; (5) an earplug from the dining-room floor; (6) wilderness folding-blade knife found on dining-room table; (7) PMC-ammunition box, Smith & Wesson .40 caliber, found in kitchen; (8) Sig Sauer owner's manual found in kitchen; (9) Airsoft Uzi 9 found in master bedroom; (10) Nike glove package found on the upstairs ledge; (11) bandage from Nike glove found on upstairs ledge; (12) black leather glove found upstairs; (13) earplug found on game-room floor; (14) broken briefcase handle found in game room; (15) Sig Sauer magazine found in game room; (16) black briefcase found in living area upstairs; (17) earplug found in appellant's bedroom; (18) black shirt found in upstairs bathroom; (19) towels with stains found in upstairs bedroom; (20) broken Panama Jack sunglasses found in computer room; (21) golf club; (22) swab from golf club; (23) broken sunglasses piece found by the foyer, (24) black Nike leather glove found on the foyer floor; and (25) a 20–ounce A & W Root Beer bottle found on dining-room floor.

ineffective by failing to raise a meritless objection.

We overrule appellant's second point of error.

### The State's Closing Argument on Punishment

In his third issue, appellant contends that the trial court erred by overruling his objection to the State's punishment-phase argument to the jury that "if he kills again, that is on you."

### A. Applicable Law

 The law provides for and presumes a fair trial free from improper argument by the State. *Long v. State*, 823 S.W.2d 259, 267 (Tex.Crim.App.1991). In general, proper jury argument encompasses one of the following: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App.1999); *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). A proper plea for law enforcement may argue the relationship between the jury's verdict and (1) the deterrence of crime in general, (2) the deterrence of specific crimes, (3) the impact it will have on the community at large, or (4) the impact it will have on narrower segments of the community (e.g., law enforcement officers, highway drivers, women, or children). *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex.Crim.App.1990). However, the State may not argue that the community at large or a particular segment of the community expects or demands a guilty verdict or a particular punishment. *Id.* at 56. The State may not ask the jurors to place themselves in the shoes of the victim. *Boyington v. State*, 738 S.W.2d 704, 709 (Tex.App.-Houston [1st Dist.] 1985, no pet.). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Sandoval*, 52 S.W.3d at 857.

### B. Analysis

 Appellant contends that the State's argument was not reasonable because it intimidates jurors by placing them in the shoes of a future victim. *See Boyington*, 738 S.W.2d at 709. The State's argument in no way suggests that the jurors will themselves be the victims. The State's argument is merely that, if there were a future victim, the jurors would bear some part of the moral responsibility because they had the option to prevent that outcome. *See Rocha v. State*, 16 S.W.3d 1, 21–22 (Tex.Crim.App.2000) (noting that argument that places moral responsibility upon jury for potential subsequent murder is legitimate plea for law enforcement). Just as it is a proper plea for law enforcement to argue the relationship between the present verdict and the deterrence of future crimes, it is also proper to argue the relationship between the present verdict and incapacitating the defendant from committing future crimes. *See Meadoux v. State*, 325 S.W.3d 189, 195 (Tex.Crim. App.2010) ("Four goals of penal sanctions have been recognized as legitimate: retribution, deterrence, incapacitation, and rehabilitation.").

 Appellant also argues that the State's argument interjects new facts not on the record relating to appellant's propensity to commit a future murder. The State's argument does not indicate the likelihood of such a future occurrence. It merely poses the hypothetical possibility that a person who has murdered once could do so again. The evidence at trial supports the State's theory that appellant prepared for the murder by practicing firing the pistol, that appellant lay in wait in

order to ambush his father when he arrived home after work, and that appellant showed no emotion or remorse after killing his father. Additionally, appellant's mother testified that, about a month before killing his father, appellant put bleach into a glass of water that his father almost drank and that appellant had been written up by his school for assault. We conclude that the State's argument that appellant might kill again was a reasonable deduction from the evidence. *Cf. Rocha*, 16 S.W.3d at 22 & n. 21 (holding argument that defendant would kill again is reasonable deduction from evidence where evidence showed that defendant committed capital murder during robbery, participated in killing another person, invaded home and held occupants hostage, and hid with gun in firing position in order to ambush police officer chasing him after he robbed bank); *Cook v. State*, 858 S.W.2d 467, 473–74, 477 (Tex.Crim.App.1993) (holding argument that defendant would kill again is reasonable deduction from evidence where evidence showed that defendant had violent past history, that defendant had previous aggravated assault conviction, and that defendant showed no remorse after killing).

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.