**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00246-CR**
_____

**EDGAR TECUM-SAJCHE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. F21-37570**

**MEMORANDUM OPINION**

A jury found Edgar Tecum-Sajche ("Tecum-Sajche") guilty of possession of a controlled substance, in an amount equal to or less than one gram, a state jail felony, and the trial court sentenced him to 180 days in jail probated over two years. *See* Tex. Health & Safety Code Ann. § 481.115. In one issue, Tecum-Sajche complains that he received ineffective assistance of counsel when his trial attorney failed to move to suppress an officer's search of his pockets where the cocaine was located. As discussed more fully below, we affirm the trial court's judgment.

1

## Background

The trial evidence showed that on the night of April 17, 2021, Tecum-Sajche attempted to enter Red's Icehouse with a group of friends. Mark Greene, a Red's employee working the door that night, testified that Tecum-Sajche was paying for the group, and when Tecum-Sajche went to open his wallet to pay Greene the money, something fell out of his wallet. Greene believed that what fell out of Tecum-Sajche's wallet was cocaine. He specifically denied that it was trash. Greene told Tecum-Sajche that he dropped something, and he testified that Tecum-Sajche appeared to know what it was, "because he picked it up real fast." Greene explained that it was like Tecum-Sajche did not want other people to see it. Greene said that Tecum-Sajche entered the club and went to the bar. After thinking about it briefly and dealing with some other customers, Greene got his manager. It was Greene's practice not to intervene but to get his manager, because they have police officers working there. Greene also identified a small white baggie containing a powdery substance as being what fell out of Tecum-Sajche's pocket.

Beaumont police officer Joshua Jackson testified he was working a secondary job at Red's that night when the manager got his attention "about one of his employees observing something that occurred" at the business's entry. He then found Officer Gerber, who was working with him that night, and after speaking with Gerber and the manager, Jackson located the person who supposedly dropped the

2

drugs. Jackson said he easily located the man and identified him as Tecum-Sajche, who he also identified in court. Jackson explained that he made contact with Tecum-Sajche inside the establishment and detained him. It was loud, though, so Jackson walked him outside so they could speak in a quieter environment. Jackson explained that once outside,

> I started to investigate whether he had drugs on him or not. . . . my understanding was he pulled some money out of his pocket, a bag of drugs fell out with the money and I.D. or one or the other and then picked up the bag and put it back in his pocket. So, I was confident he still had drugs on his person if that was, indeed, drugs. So, I detained him inside, brought him outside, talked to him there, and asked if I could search his person.

Tecum-Sajche allowed Jackson to search his pocket, and when he did, he pulled out a "wad of dollar bills" and a "small clear bag . . . containing a white powder substance." He then said he handed the money to Officer Gerber but kept the cocaine. At the time he found the baggie, he believed it to be cocaine, and when weighed, it was less than a gram.

Jackson's body camera video was admitted into evidence showing his interaction with Tecum-Sajche. Jackson said he detained Tecum-Sajche, which he explained meant that he stopped to investigate further whatever is occurring or has been reported. He put Tecum-Sajche's hands behind his back for safety reasons, because he was unsure if he had a weapon, plus people who have been drinking can sometimes be aggressive, and he did not want that to happen. Jackson agreed the

3

video showed the drugs fell out of the money he handed Officer Gerber, which was slightly different than what he testified to initially, but it had been almost two years, and the bodycam showed what happened. Jackson did not recall finding a wallet; he thought it was just money and an I.D. Tecum-Sajche confirmed it was cocaine and said that someone must have put it in his pocket. Tecum-Sajche claimed someone was trying to frame him by putting drugs on him, but Jackson never observed that.

Beaumont police officer Kory Gerber also testified that he was working a secondary job at Red's that night when a manager flagged him down and told him that a subject came in to pay, and when he did, he dropped a small packet of narcotics. Gerber then relayed that information to Officer Jackson, and they detained the subject and brought him outside. Once outside, Officer Jackson began talking to Tecum-Sajche and asked if he could look in Tecum-Sajche's pockets, which he allowed. Jackson then "pulled out a wad of money," and handed it to Gerber, and when Gerber was sorting the money, trying to rearrange it, "a small packet of narcotic fell from the money." Gerber picked up the drugs then handed them to Officer Jackson and did not handle the drugs after that.

Gerber's body camera video was also admitted and played for the jury. Gerber explained that when they took Tecum-Sajche outside, he denied having cocaine and offered to let them check his pocket, so Jackson reached into his pocket. Jackson pulled "[a] wad of money" out of his pocket, and Gerber did not recall if Tecum-

4

Sajche had a wallet. The video showed a small baggie of drugs falling out of Tecum-Sajche's pocket when Jackson pulled the money out. Gerber believed that Tecum-Sajche knew what the drugs were, because they were his and fell out of his pocket. Tecum-Sajche denied using drugs and offered to be drug tested. Initially, Gerber believed the substance may have been methamphetamine, since it appeared crystallized, but when Gerber said that is what he thought it was, Tecum-Sajche corrected him and said, "[N]o, it was cocaine." Gerber said that Tecum-Sajche did not appear surprised about the drugs and seemed confident it was cocaine.

Marsha Cox, a forensic scientist and chemist with the Jefferson County Regional Crime Lab also testified. The preliminary tests on this substance were positive for cocaine, which she then confirmed with additional testing. The substance weighed .157 grams. Cox made a report of her findings, which was admitted into evidence.

During opening, the defense theory was that Tecum-Sajche did not knowingly or willingly have the cocaine and instead inadvertently picked up the cocaine that was on the ground believing it was trash. During opening, trial counsel stated,

> I think the evidence is going to show that Edgar showed up to a bar at Red's Icehouse. And as he's going in, he and his buddies are all pulling out their I.D.s and showing their I.D.s and paying their cover charge, that the bouncer himself says, hey, man, pick that up thinking it's just trash or something on the floor. Picks it up and puts it in his pocket and then he's asked to go outside with some officers. He complies. They ask if they can search his pockets. Sure, I don't have any cocaine on

5

me, not knowing that the trash he picked up was a very, very small bag of cocaine. And they arrest him.

During closing, the defense again focused on this theory. The defense also pointed out discrepancies between Greene's testimony and the officers' testimonies.

In his sole issue, Tecum-Sajche asserts he received ineffective assistance of counsel since his attorney failed to move to suppress an officer's search of his pockets where the cocaine was located.

### Standard of Review and Applicable Law

To establish ineffective assistance of counsel, a defendant must satisfy the following test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A defendant is not entitled to errorless representation. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013). We examine the totality of the representation when analyzing a claim of ineffectiveness. *See id.*; *see also Thompson*, 9 S.W.3d at 813.

6

"To show prejudice, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 694); *see also Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd).

"Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Id.*; *see also Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (explaining record was insufficient to show counsel's representation was ineffective when record failed to show that counsel's representation lacked tactical and strategic decision-making). If trial counsel is not given the opportunity to explain his actions, "then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield v. State*, 363 S.W.3d 591,

593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

Failing to file a motion to suppress evidence is not per se ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *Carmen v. State*, 358 S.W.3d 285, 295 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "Counsel is not required to engage in the filing of futile motions." *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.) (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). To succeed on an ineffective-assistance claim based on counsel's failure to file a motion to suppress, "'an appellant must show by a preponderance of the evidence that the result of the proceeding would have been different—i.e., that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction.'" *Carmen*, 358 S.W.3d at 295 (quoting *Hollis*, 219 S.W.3d at 456). To satisfy this burden, an appellant must produce evidence defeating the presumption of proper police conduct. *See id.* Thus, an appellant must develop sufficient facts and details of the search to conclude that the search is invalid. *See id.*

There are three categories of police and citizen interactions: (1) consensual encounters; (2) investigative detentions requiring reasonable suspicion; and (3) arrests or their custodial equivalent. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). During an

8

investigatory detention, officers may use reasonably necessary force to maintain the status quo, effectuate an investigation, or protect the safety of individuals at the scene. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002); *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

"Under the Fourth Amendment, a search is unreasonable when conducted without a warrant or probable cause." *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Voluntary consent is an exception to the warrant requirement for searches, and a person can consent orally or by action. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). The State must prove the voluntariness of consent by clear and convincing evidence. *See Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). The ultimate question is whether a person's "'will ha[s] been overborne and his capacity for self-determination critically impaired,' such that his consent to search must have been involuntary." *Id.* (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)). The voluntariness of consent to a search is a fact question determined from all the circumstances. *See id.* at 460. Factors we consider in determining the voluntariness of consent include (1) the length of detention before giving consent, (2) whether the defendant was physically mistreated, (3) whether the police used violence or threats of violence, (4) whether the police made promises or inducements, (5) whether the police used deception or trickery, (6) the physical and

mental condition and capacity of the defendant, and (7) whether the police told the defendant that he had a right to refuse consent. *See Tucker*, 369 S.W.3d at 185.

**Analysis**

In this case, Tecum-Sajche's ineffective-assistance claim fails on both *Strickland* prongs. First, he has failed to show trial counsel's performance was deficient, as the alleged ineffectiveness is not firmly founded in the record. *See Strickland*, 466 U.S. at 687 (outlining two-prong test for ineffective assistance claims); *Perez*, 310 S.W.3d at 892–93 (same); *see also Thompson*, 9 S.W.3d at 813 (explaining that ineffectiveness must be firmly founded in the record). Here, Tecum-Sajche filed a Motion for New Trial contending that a motion to suppress would have been granted and asserting that his statement about the drugs was custodial but did not challenge the search's validity. Nevertheless, the record does not show a hearing took place where trial counsel was afforded an opportunity to explain his actions, and absent this, our review is highly deferential, and we presume "counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833.

The record here is insufficient to show "that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome" that presumption. *Id.*; *see also Estrada*, 313 S.W.3d at 311. Here, Tecum-Sajche's trial counsel was not afforded the opportunity to explain his actions. *See Menefield*, 363

10

S.W.3d at 593. Rather, the record shows that trial counsel presented a strategy of challenging that Tecum-Sajche's possession was not knowing or intelligent. Counsel argued that Tecum-Sajche entered the club with a group of people, implying someone else could have dropped the cocaine. When the bouncer thought he dropped something and told him to pick it up, Tecum-Sajche did so, thinking it was trash and put it in his pocket. Counsel also attacked discrepancies in the witnesses' version of events and noted that Tecum-Sajche would not have offered to have his pockets searched or to take a drug test if he had known what the substance was. We cannot say the "challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392). Thus, we conclude that Tecum-Sajche has failed to meet the first prong of the *Strickland* test. *See Strickland*, 466 U.S. at 687; *Perez*, 310 S.W.3d at 892–93.

Tecum-Sajche likewise fails to meet the second *Strickland* prong, as he cannot show that he was prejudiced by counsel's failure to move to suppress. *See Strickland*, 466 U.S. at 687; *Perez*, 310 S.W.3d at 892–93. Here, he must show that the motion to suppress would have been granted and remaining evidence would have been insufficient to support his conviction. *See Carmen*, 358 S.W.3d at 295 (quoting *Hollis*, 219 S.W.3d at 456). To satisfy this burden, an appellant must produce evidence defeating the presumption of proper police conduct. *See id.* Thus,

11

an appellant must develop sufficient facts and details of the search to conclude that the search is invalid. *See id.*

The record shows officers temporarily detained Tecum-Sajche after the manager alerted them that a Red's employee personally witnessed Tecum-Sajche drop a packet of what appeared to be cocaine. Officers handcuffed him, which they explained was for their safety, then escorted him outside to a quiet environment, which took a matter of minutes. When officers confronted him about the possibility that he had cocaine, Tecum-Sajche *offered* to allow officers to search his pockets within a couple of minutes of being detained, although officers did not tell him he had the right to refuse. *See Tucker*, 369 S.W.3d at 185 (outlining factors for determining voluntariness of consent). Officers did not mistreat him, use trickery, threats of violence, or promise him anything. *See id.* Further, although Tecum-Sajche appeared to be drinking alcohol immediately before the encounter, he was able to answer the officers' questions without difficulty. *See id.* When they searched him and located the packet of cocaine, Tecum-Sajche corrected one of the officers and told him it was cocaine instead of methamphetamine.

No evidence contradicts this that would show his will was overborne or his capacity for self-determination was critically impaired. *See Watson*, 423 U.S. at 424; *Meekins*, 340 S.W.3d at 459. After considering the totality of the circumstances and the various factors, the record shows that Tecum-Sajche voluntarily consented,

which is an exception to the warrant requirement. *See id.* at 459–60; *Valtierra*, 310 S.W.3d at 448. Since Tecum-Sajche failed to meet his burden to show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction, he likewise cannot satisfy the second *Strickland* prong. *See Carmen*, 358 S.W.3d at 295.

We overrule his sole issue.

### Conclusion

Having overruled Tecum-Sajche's sole issue, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON<br>
Chief Justice

Submitted on March 5, 2025
Opinion Delivered July 2, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.