

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00466-CR

Niketa Vashuan **BUSH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, McLennan County, Texas
Trial Court No. 2012-0708-CR2
Honorable Michael B. Gassaway, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 29, 2014

REVERSED AND REMANDED

On June 10, 2013, a jury found Niketa Vashuan Bush guilty of misdemeanor theft over $50.00, but less than $500.00, and assessed punishment at 180 days in the county jail and a $2,000.00 fine.  On appeal, Bush argues the State's closing argument exceeded the zone of acceptable jury argument.  We agree.  Additionally, because the record supports actual harm to Bush, we reverse the trial court's judgment and remand this cause for a new trial.

**BACKGROUND**

On August 15, 2011, Niketa Bush, Shautonqua Gaines, and Gaines's two small children were at the Yesterday & Today clothing store in Waco, Texas. Three employees testified that several purses and cosmetic bags were stolen by Bush and Gaines. Bush was charged with the theft of one handbag.

Employee Gerry Dana testified to witnessing Bush in the store holding two Vera Bradley handbags. Dana relayed that, when she walked around the counter to the cash register, Bush suddenly turned toward her and threw a handbag at Dana's face. Bush then ran out the front door with the other handbag.

Dana's statement, taken shortly after the incident, was admitted into evidence. Defense counsel questioned Dana regarding several alleged inconsistencies in the statement. Dana acknowledged it had been two years since the incident and that she could not remember some of the details. Defense counsel paid special attention to the absence of any discussion in Dana's statement regarding the purse being thrown at her face. Although Dana conceded that the counter was relatively tall and actually at her eye level, and that Bush was potentially throwing the bag on the counter and not directly at her, Dana was adamant that Bush threw the bag at her face.

On direct questioning, Dana testified that Bush was holding two Vera Bradley hipster purses, one of which was thrown at her. Dana's statement, however, did not identify Bush; instead it provided that "*[s]he* immediately threw one of the Hipster purses and make up bag[s] on the counter and charged out the door." When asked who the "she" was, Dana conceded the statement referred to Gaines, not Bush. She also described Gaines as having "an armful of Vera Bradley merchandise." Dana's written statement designated Bush as "the older lady" who "did not seem to be shopping for herself but instead was answering questions to [Gaines] who was shopping

intensely." Dana also testified that Gaines and her children were already out of the store when Bush grabbed the bag and ran out of the door.

The State called Stephanie Thompson who testified that while Bush and Gaines were in the store, Thompson's focus was on Gaines who was loud and disorderly. Thompson relayed that she believed "[Bush] had two bags and threw one at [Dana]. [Gaines] had a pile of bags . . . I actually saw [Gaines] grab the whole stack and come and lay it on the counter right under—right by her." Thompson continued that both women grabbed stuff and ran out the door. Contrary to Dana's testimony, Thompson testified Bush ran out first and Gaines and her children followed. During cross-examination, Thompson conceded that she did not actually see Bush carry a bag out of the store, but that she "knew [Bush] had one."

The third employee, Jennifer Dubbs, was behind the counter and testified that she did not see much of the incident. Dubbs did not see Bush handle any of the Vera Bradley merchandise, but confirmed she saw Gaines leave the store with hipster and cosmetic bags.

In her defense, Bush denied any involvement in the theft, including knowing whether Gaines planned to steal any items that day. Bush testified she was near Dana the entire time she was present in the store and further denied throwing anything, including a purse, at Dana. On cross-examination, the prosecutor attacked Bush's credibility and motive to lie. "So it comes down to who the jury believes, you or them." The State did not stop there and continued to attack Bush's credibility. "So [getting the nursing degree is a] pretty big motive for you to get up on the stand and lie, isn't it."

The jury convicted Bush and sentenced her to 180 days in jail and assessed a $2,000.00 fine. This appeal ensued.

**IMPROPER JURY ARGUMENT**

In her sole issue on appeal, Bush contends the State's closing argument injected new facts into the case and exceeded proper jury argument. The State contends the prosecutor's statement was a plea for law enforcement. Alternatively, even if the prosecutor's statement was improper, the State argues that the trial court's instruction cured any error.

**A.      Acceptable Areas of Closing Argument**

"The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence." *Harris v. State*, 122 S.W.3d 871, 883 (Tex. App.—Fort Worth 2003, pet. ref'd); *accord Temple v. State*, 342 S.W.3d 572, 602 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (same); *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993) (same). A prosecuting attorney is permitted to draw from all of the facts in evidence and make reasonable, fair, and legitimate references. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (per curiam) (citing *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983)). Jury argument, however, may not be predicated upon, either directly or indirectly, matters outside the record. *Id.*

Arguments founded upon such information are not only improper but reversible if they inject or emphasize harmful facts outside the record. *See id.* (disallowing argument asking jury to speculate about other crimes defendant may have committed); *Melton v. State*, 713 S.W.2d 107, 114 (Tex. Crim. App. 1986) (reiterating ban against State suggesting the defendant is responsible for a crime other than that alleged in the indictment); *Everett v. State*, 707 S.W.2d 638, 641 (Tex.

Crim. App. 1986) (barring implications of the existence of other damaging evidence not in the record).

## B.    State's Closing Argument

During the State's closing argument, the State commented on Bush's aspiration to become a licensed nurse:

> There's a lot at stake in a case like this.  For the defendant there's at stake a job as an LVN where patients are sedated or weak or sleeping often with purses and wallets and valuable bags in the room, in settings where there are drugs that have street values.

Bush's counsel objected and asked for an instruction to disregard.  The trial court instructed the jury:

> As to the speculation about the sale of pharmaceuticals, I ask you to disregard.

Bush's attorney "reluctantly and respectfully" moved for a mistrial which was denied by the trial court.  *See* TEX. R. APP. P. 33.1(a) (preserving appellate complaint); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (requiring "a timely, specific request that the trial court refuses").

## C.    Arguments of the Parties

Bush contends the trial court erred in denying her motion for mistrial because the prosecutor's statement was based on facts outside the record and was highly prejudicial.  Moreover, Bush argues the State departed from the acceptable areas of jury argument and engaged in conduct that was calculated to deny her a fair and impartial trial.

The State responds that Bush failed to preserve error because defense counsel (1) did not object to the limiting instruction as being ineffective and (2) did not request the trial court to provide a different limiting instruction.  The State also contends the prosecutor's remarks were in response to Bush's testimony that she was pursuing a career as an LVN and that she would not do

anything that would negatively affect that career. Accordingly, the State argues the prosecutor's closing argument properly summarized the evidence, was a rejoinder to testimony offered by Bush, and asked the jury to deter Bush from committing further similar crimes.

**D.    Jury Argument Analysis**

*1.    Preservation of Error*

An objection to improper jury argument must be preserved by timely objection and request for an instruction that the jury disregard the improper remark. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring a party to state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. 2002) (explaining "objections promote the prevention and correction of errors"). The two-fold purpose for the rule is (1) "to inform the judge of the basis of the objection and give him the chance to make a ruling on it," and (2) to provide opposing counsel an opportunity "to remove the objection or provide other testimony." *Garza v. State*, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004); *accord Saldano*, 70 S.W.3d at 887. Bush's counsel objected at trial that the State's argument was "outside the record." Her complaint to the trial court was sufficiently specific to allow the trial court an opportunity to rule on the substance of her complaint, and Bush's complaint on appeal was essentially the same. *See Garza*, 126 S.W.3d at 82; *see also Clarke v. State*, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008). We, therefore, conclude Bush properly preserved her complaint for appeal.

*2.    Plea for Law Enforcement*

The State contends the argument was a plea for law enforcement. A prosecutor "may argue the relationship between the jury's verdict and (1) the deterrence of crime in general, (2) the deterrence of specific crimes, (3) the impact it will have on the community at large, or (4) the

impact it will have on narrower segments of the community." *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Borjan*, 787 S.W.2d at 55–56). A prosecutor may also remark on the harm a defendant may to do others in the future. *Id.* Yet, in doing so, the State may not simply allege new facts and new crimes for which the defendant is not on trial. *See Ex parte Lane*, 303 S.W.3d 702, 711–12 (Tex. Crim. App. 2009). Accordingly, whether the argument was a proper plea for law enforcement turns on whether the argument injected new facts or was a reasonable deduction from the evidence.

3.      *Reasonable Deductions from the Evidence*

Arguments of Bush's prior convictions and the conflicts within the testimony were admissible with regard to Bush's credibility. Bush contends, however, the prosecutor's argument exceeded any reasonable deductions from the admitted evidence. The argument "referred to a wholly new and unsubstantiated allegation" that Bush planned to steal from patients and that she would steal drugs to sell on the street. *See id.*; *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011) (barring prosecutors from using closing argument to present evidence outside the record). By doing so, the State attempted to inject new and highly prejudicial evidence before the jury. Argument based on "improper references to facts that are neither in evidence nor inferable from the evidence are 'designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Ex parte Lane*, 303 S.W.3d at 711–12 (quoting *Borjan*, 787 S.W.2d at 57); *accord Freeman*, 340 S.W.3d at 728.

Here, the State's argument attempted to persuade the jury to convict Bush on criminal acts that were neither raised by the evidence nor for what Bush was on trial. There was no evidence in the record that Bush ever stole from a patient or sold prescription drugs. Accordingly, the prosecutor's contentions during closing argument exceeded any reasonable deductions from the

admitted evidence and were, therefore, improper. *See Freeman*, 340 S.W.3d at 728; *Lane*, 303 S.W.3d at 711–12; *Borjan*, 787 S.W.2d at 57.

Under most circumstances, improper jury argument may be cured by an instruction to disregard, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused." *Hawkins v. State*, 135 S.W.3d 72, 75 (Tex. Crim. App. 2004). Therefore, in addition to error, Bush must show actual harm. *Freeman*, 340 S.W.3d at 728. We, therefore turn to a harm analysis.

**D.     Harm Analysis**

*1.     Arguments of the Parties*

Bush contends the prosecutor's statement was severe and introduced into a shoplifting trial the specter of Bush committing drug offenses and offenses against weak and sedated persons. Additionally, because the argument occurred immediately before the jury's deliberation on guilt-innocence, the defense did not have an opportunity to attenuate the error's harmful effect.

The State argues that Bush did not suffer harm as a result of the prosecutor's argument. The closing argument was five pages and over nine minutes long. The argument in question, on the other hand, consisted of three lines of the record and spanned only seconds. Additionally, the State did not repeat or refer to the improper statement after the objection was sustained and the instruction to disregard was given by the trial court. Thus, the State argues any effect is minimal.

*2.     Extreme or Manifestly Improper*

When jury argument falls outside the approved areas, "it will not constitute reversible error unless [it] is extreme or manifestly improper . . . or injects new facts harmful to the accused into the trial proceeding." *Temple v. State*, 342 S.W.3d 572, 602–03 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013); *see* TEX. R. APP. P. 44.2(b); *Hawkins*, 135 S.W.3d at 75. In determining whether the prosecutor made an improper jury argument, the

reviewing court considers (1) "[the] severity of the misconduct (prejudicial effect [of the prosecutor's remarks]), (2) curative measures, [and] (3) the certainty of conviction absent the misconduct." *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *accord Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

### a. Severity of the Misconduct

The argument in question was at the close of the guilt-innocence portion of the trial and Bush had not yet been convicted of any wrongdoing. The prosecutor introduced the specter of Bush committing drug offenses and preying on the weak. The argument took place during the State's rebuttal portion of the closing argument and, thus, immediately prior to deliberation. As a result, any harmful effect could not have been attenuated by argument of defense counsel. *See Brown v. State*, 978 S.W.2d 708, 714–15 (Tex. App.—Amarillo 1998, pet. ref'd). Additionally, the severity of the alleged misconduct cannot be said to be "small, or 'mildly inappropriate.'" *Contra Graves v. State*, 176 S.W.3d 422, 430 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (quoting *Mosley*, 983 S.W.2d at 260) (deciding the misconduct was only minimal). Accordingly, we conclude the "severity of the misconduct" weighs in Bush's favor.

### b. Curative Measures

The trial court instructed the jury to disregard the prosecutor's comments regarding "the sale of pharmaceuticals." "Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment." *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985); *accord Long v. State*, 823 S.W.2d 259, 269–70 (Tex. Crim. App. 1991) (reviewing harm before Rule 44.2 applied); *cf. Kelly v. State*, 321 S.W.3d 583, 597 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding the State's inflammatory closing argument was improper, severely prejudicial, and harmful).

With regard to curative measures, Bush contends the trial court "asked" but did not instruct the jury to disregard the prosecutor's statement. The State argues the trial court properly instructed the jury to disregard the allegedly improper statement and the prosecutor's argument was not so prejudicial that an instruction to disregard could not have removed its ill effects from the mind of the jury. *See Hawkins*, 135 S.W.3d at 78–79. We disagree.

The prosecutor's remark was incredibly inflammatory. The State not only accused Bush of further crimes, but suggested her motive for being a nurse was to procure drugs. We conclude the trial court's instruction to disregard did not negate the alleged injury and was, therefore, insufficient to cure the misconduct. *See Kelly*, 321 S.W.3d at 597–98.

### c.      Certainty of the Conviction

"A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *accord Ex parte Henderson*, 384 S.W.3d 833, 860–61 (Tex. Crim. App. 2012). The State argues the conviction was still certain absent the prosecutor's statement. Once again, we disagree with the State.

Bush's conviction was not a certainty and was instead a "she said-she said." Bush denied taking the purse and there were inherent conflicts within the State's case. Key to this case was whether Bush actually threw a purse at Dana and then ran out of the store with the other purse. Although Dana testified that Bush threw a purse at her face, Dana's written statement did not include the same language. No other witness actually saw Bush take anything, yet all three assumed Bush took the purse in light of its disappearance. Most important, however, was the testimony regarding Gaines's conviction stemming from the same incident. Based on questions levied by the State, the jury learned Gaines was charged with felony theft and entered a plea

bargain to reduce the sentence to a misdemeanor. Gaines had acknowledged her role in the theft and had already been assessed punishment. A reasonable jury could just as easily determine that Gaines's felony charge was actually more in line with the facts presented at trial.

Accordingly, we conclude Bush's evidence of guilt was not "very strong" and the certainty of conviction was not "high" despite the improper statement by the prosecutor. Furthermore, we cannot say with confidence that the prosecutor's error had no influence or only a slight effect on the jury's determination regarding Bush's guilt and sentence. *See Ex parte Henderson*, 384 S.W.3d at 860–61; *Johnson*, 967 S.W.2d at 417. Accordingly, we conclude the trial court erred in overruling Bush's motion for mistrial and the error was harmful. *See* TEX. R. APP. P. 44.2(b); *Martinez*, 17 S.W.3d at 692–93.

## CONCLUSION

During the State's closing argument, the prosecutor injected new and highly prejudicial evidence into the case. The argument was not a reasonable deduction from the evidence and was not an appropriate plea for law enforcement. Instead of reasonable inferences, the State's argument was an attempt to "arouse the passion and prejudices of the jury" and, therefore, was highly inappropriate. *See Freeman*, 340 S.W.3d at 728; *Lane*, 303 S.W.3d at 711–12; *Borjan*, 787 S.W.2d at 57. Moreover, because all three prongs of the harm analysis weighed in Bush's favor, and against the State, we conclude that Bush showed her substantial rights were affected. *See* TEX. R. APP. P. 44.2(b); *Martinez*, 17 S.W.3d at 692–93. Accordingly, we reverse the trial court's judgment and remand this cause for a new trial.

Patricia O. Alvarez, Justice

DO NOT PUBLISH