**Affirmed as Modified; Opinion Filed August 6, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-00452-CR

No. 05-14-00453-CR

**MICHAEL WAYNE WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause Nos. F-13-71062-J, F-13-56255-J**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

Appellant Williams entered a boutique, brandished a gun, verbally threatened multiple patrons, physically fought another customer, and left with items belonging to several customers.

Despite Williams's effort to contest his identity as the offender, a jury convicted him of two robbery offenses. Williams elected to have the court assess punishment and pled not true to the two enhancement paragraphs in each indictment. The trial court sentenced him to fifty years in prison for each offense. Williams then appealed.

In his first and second issues, Williams asserts that the trial court erroneously denied a motion to disregard and a motion for mistrial in response to the State's improper jury argument questioning why a key identification witness did not testify. Williams's third and fourth issues

argue that the sentences in each case are illegal because the trial judge did not orally pronounce her findings on the enhancement paragraphs.

By cross-point, the State asks us to modify the judgments to reflect that Williams pled not true to the first enhancement paragraph in each case and that the court found the first enhancement paragraphs true.

For the reasons discussed below, we conclude that Williams was not harmed by the State's improper argument and the sentences are not illegal because the trial court implicitly found at least one of the first enhancement paragraphs to be true. Accordingly, we modify the trial court's judgments as the State asks, and as modified, we affirm.

## I. Background

At noon on Memorial Day in 2012, Williams entered Emeralds to Coconuts, a Dallas specialty boutique. He was in the store for a total of ten to fifteen minutes.

Holly Harris, the store manager, was assisting a customer when Williams entered the store. Harris exchanged greetings with Williams, and she noticed an unusual look on his face, like he was "getting amped up for something," when he pulled out a gun, waved it around, and said, "All you bitches get on the floor."

Three friends, Jana Caryol, Debra Patterson, and Rhonda McCollum, were shopping in the store at that time. Caryol testified that she also heard Williams instruct them to get down on the floor.

While he continued waving a gun, Williams yelled at the people in the store to remove their jewelry and to throw their money and jewelry onto the floor. Williams stood right in front of Caryol, pointed the gun at her face, and said, "Bitch, get down on the floor. Give me your money and your jewelry." While Caryol was removing her rings and throwing them onto the

floor, she believed she and her friends were going to die because Williams repeatedly yelled, "Get down or I'll pop you."

When Patterson first heard a man say, "You bitches get down on the ground now; I want all your jewelry and money," she thought it might be a joke. But when she turned around and faced him, Williams was pointing his gun at her. She testified she was "scared for [her] life."

During the robbery Williams instructed Harris to move from the rear of the store to the front, saying, "No, you, bitch, you come up here." She crawled to the front as instructed and laid flat on her belly; she too believed she was going to die.

Leon Haley was in the dressing room area with his wife when Williams entered the store. While Harris was on the floor, Leon tackled Williams, and the two men wrestled. As they wrestled, Williams dropped his cell phone. A piece of Williams's gun fell off, and Harris picked it up. The men knocked down racks during the struggle, and eventually reached the front door and went outside. Leon left when Williams pointed the gun at him and said, "You better run."

When Patterson heard the bell on the door, she believed Williams was gone and started to call the police. But the bell chimed again, the door opened, and Williams came back in.

Williams gathered some of the jewelry that was on the floor. He then complained there was no money, so Patterson slung her billfold out onto the floor and he grabbed it. Patterson's billfold contained her checkbook, credit cards, social security card, driver's license, and $80 cash. One of her earrings, however, was left behind.

Williams then fled on foot and the women in the store called the police, who arrived a few minutes later.

The police collected the evidence Williams left behind, consisting of the dropped cell phone and the pistol slide, which the officers determined came from a Daisy BB gun.

In addition to Patterson's billfold, the other property Williams took included (i) Harris's wedding ring, (ii) Harris's gold, amethyst, and turquoise necklace, (iii) some of Caryol's rings, and (iv) all the jewelry Patterson was wearing, except one earring, which Williams left behind.

Using the phone number for the cell phone Williams dropped, the police identified him as a suspect within hours of the robbery. When he was arrested that same day, Williams had two pawn tickets, a gold earring, and a ring on his person, but one pawn ticket blew away. The earring matched Patterson's earring that was left in the store.

In a videotaped post-arrest interview, Williams said that he did not use a real gun and repeatedly tried to negotiate with the detective, asking how cooperating and providing specifics about the robbery would help him. He admitted he "made a mistake" and explained that he did it because he had bills to pay. And he described the altercation with Leon as a "scuffle."

Also that same day, Harris viewed a six-person photo lineup at the police station and identified Williams as the robber. The lineup procedure was video recorded and admitted into evidence. Harris testified (i) that she had a number of opportunities to view the robber while he was in the store, and (ii) she saw his face at a distance of only a foot and a half when he picked up her jewelry. She also said that her identification of him in the courtroom was based on her memory of seeing him in the store.

Surveillance video from a pawn shop showed Williams pawning some of the jewelry from the robbery at 5:04 p.m. and 5:11 p.m. on the day of the offense. The pawn shop also provided a copy of the pawn ticket that blew away when Williams was arrested.

The two indictments charged Williams with robbing Harris and Patterson and each indictment included two enhancement paragraphs.

The jury found Williams guilty in both cases.

Williams elected to have the court assess punishment and pled "not true" to the two enhancement paragraphs in the indictments. During the punishment phase, the State introduced certified copies of the judgments against Williams for the prior offenses identified in the enhancement paragraphs. Also during the punishment hearing, Williams testified and admitted to having committed the enhancement allegation offenses.

The trial judge did not make any oral pronouncements concerning the enhancement paragraphs, but noted findings of "true" on the docket sheets of both cases. With regard to the first enhancement paragraphs, the written judgments say "N/A" with regard to Williams's plea and the court's finding. For the second enhancement paragraphs, the judgments reflect a plea of "not true" and a finding of "true." The trial court sentenced Williams to fifty years' imprisonment for each offense.

## II. Analysis

**A. Williams's First and Second Issues: Did the trial Court erroneously deny Williams's requested jury instruction and mistrial motion regarding the State's closing argument about why Leon did not testify?**

**1. The Trial Court's Alleged Errors.**

During closing argument defense counsel commented on the fact that the State did not call Leon Haley to testify, posing the question, "Where's Leon?" Defense counsel further argued:

> Where's the man that apparently allegedly struggled with Mr. Williams, fought him face to face, hand-to-hand combat? If there's anybody that's gonna be able to point somebody out, it's probably the person who was involved in hand-to-hand combat with him. Where's Leon?

Responding to that argument, the prosecutor explained that Leon was then out of the country:

> And defense counsel asks where is Mr. Haley? Well, just like the judge told you during voir dire, you can have the worst week ever for jury and not be able to do something. Mr. Haley is out of the country.

–5–

Defense counsel objected that the argument "was not in evidence," and the trial court sustained the objection. Defense counsel requested a mistrial, which the trial court denied.

After the jury retired for deliberation, defense counsel reasserted his request for a mistrial, or "even doing an additive unlimited charge to this jury telling them not to consider what the prosecutor's statement was." The State responded that defense counsel invited the remark. The trial court declined both of Williams's requests. Williams now asserts the trial court erred in denying a curative instruction and a mistrial in response to the State's argument.

We review a trial court's ruling on an objection to improper argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Proper jury argument is generally limited to (1) a summation of the evidence presented at trial, (2) reasonable deductions and inferences drawn from that evidence, (3) responses to opposing counsel's argument, and (4) appropriate pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). We agree that the State's argument was improper, but for the following reasons conclude that Williams has not demonstrated resulting harm in this case.

### 2. Harm Analysis.

Improper argument error is non-constitutional error. *Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008). Thus, even if the trial court erred in denying William's request for a mistrial or his requested additional instruction, we disregard the error unless it affects the defendant's substantial rights. *Id.* Under the substantial-rights standard in this context, reversal is required only when, in light of the record as a whole, the argument is extreme, is manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook*, 29 S.W.3d at 115. When assessing the impact of harm arising from jury

argument error, we consider three factors: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the State's statements); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the conviction absent the misconduct (the strength of the evidence supporting the conviction." *See Berry v. State*, 233 S.W.3d 847, 858–59 (Tex. Crim. App. 2007). Applying these factors here, we conclude Williams was not harmed for three reasons.

One, while the prosecutor's comment was outside the evidence, based on this record, the comment that Leon was out of the country cannot be said to have been so severe that its magnitude had a prejudicial effect on Williams.

Two, the jury charge included a general instruction that the jury should not consider statements of fact that were outside the evidence or statements of law that differed from the law as stated by the court.[1]

Three, there was strong evidence tying Williams to the offenses, including:

(a) Harris identified Williams and explained that she had ample opportunity to view his face during the robbery.

(b) Williams dropped his cell phone during the robbery, and the police used his phone number to locate him.

(c) The pawn shop videotape showed Williams pawning some of the stolen jewelry only hours after the robbery.

(d) When he was arrested, Williams had two pawn tickets and other pieces of stolen jewelry in his possession.

---

[1] The instruction read: "You are instructed that any statements of counsel made during the course of this trial or during argument not supported by the evidence, or statements of law made by counsel not in harmony with the law as stated to you by the Court in these instructions, are to be wholly disregarded."

(e) Williams admitted that he had been in the store, used a pellet or a BB gun, and wrestled with a man in the store.

In light of this evidence, we cannot conclude that the complained-of comment affected Williams's substantial rights and thus we resolve William's first and second issues against him.

**B.      Williams's Third and Fourth Issues:  Are the sentences void because the trial court did not orally pronounce the enhancement paragraphs true?**

Williams contends that his fifty-year sentences are void because they allegedly exceed the permissible punishment range.  According to Williams, the sentences exceed the range of punishment because the trial court failed to orally pronounce that the enhancement paragraphs in the indictments were true.

As charged in this case, robbery is a second degree felony, punishable by not more than twenty years or less than two years in prison and a fine of up to $10,000.   TEX. PENAL CODE ANN. § 12.33, 29.02(a)(2)(b) (West 2011).   That range of punishment, however, increases to not less than five years nor more than ninety-nine years or life in prison and a fine of up to $10,000 when enhanced by one prior felony conviction and to not less than twenty-five years or more than ninety-nine years or life confinement when enhanced by two prior felony convictions.  TEX. PENAL CODE ANN. § 12.42 (b), (d) (West Supp. 2014).  Thus, unless at least one enhancement allegation in each case was found true, Williams could not have been sentenced to fifty years in prison.

Approximately two weeks before trial, the judge admonished Williams that robbery is a second-degree felony for which the normal range of punishment is two to twenty years' imprisonment and a fine up to $10,000.  The judge, however, also warned that Williams was being charged with robbery as a habitual offender in both cases meaning that Williams had previously been convicted of a felony twice before, which would make the range of punishment in both cases to be twenty-five to ninety-nine years or life.

Williams acknowledged that he declined the State's prior plea bargain offer of forty years' imprisonment and told the judge he was trying to hire another attorney. Explaining that Williams needed to work with his appointed counsel, the judge said, "I don't know how realistic it is for you to believe that your family is going to be able to hire an attorney that can represent you . . . on two habitual offenses where the State has offered you forty years."

On the day of trial, the court reminded Williams that the trial was on the two charges "as a habitual." She again advised Williams that the State was alleging that he had been convicted of a felony on two previous occasions, making the range of punishment twenty-five to ninety-nine years or life.

After the jury determined guilt, the trial court held a hearing to assess punishment. Williams was arraigned and pled not true to the two enhancement paragraphs. The State offered and the court admitted judgments of conviction for numerous offenses, including those used for enhancement. Additionally, Williams testified on his own behalf and admitted to numerous prior felony convictions, including those used for enhancement.

The trial court's docket sheet shows the following:

> Defendant [abbreviated] arraigned on enhancement paragraphs; pled NOT TRUE to both paragraphs . . . Court finds both paragraphs true . . . .

Just as a trial court can implicitly find an accused guilty while pronouncing sentence, it can implicitly find enhancement allegations to be true. *See Ray v. State*, No. 07-12-00174-CR, 2013 WL 4779734, at *1 (Tex. App.—Amarillo Sept. 5, 2013, pet. ref'd) (mem. op., not designated for publication). A trial court does not err if it fails to read the enhancement paragraphs and find them true or false on the record. *Harris v. State*, No. 05-02-01728-CR, 2005 WL 639388, at *2 (Tex. App.—Dallas March 21, 2005, pet. ref'd) (mem. op., not designated for publication) (sentences not illegal because trial court did not read enhancement paragraphs and orally find them true); *see also Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth

1993, writ ref'd) (same); *Seeker v. State*, 186 S.W.3d 36, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (same).

Here, because: (i) the trial court fully admonished Williams regarding both enhancement paragraphs in each case and repeatedly referenced the enhanced punishment range and the fact that Williams was charged as a habitual offender, (ii) the docket sheet reflects the court found the enhancements true, and (iii) the evidence proved Williams was previously convicted of the alleged offenses, we conclude that the trial court implicitly found the enhancement paragraphs to be true and sentenced Williams accordingly. The sentences, therefore, are not illegal. We resolve Williams's third and fourth issues against him.

## C. The State's Cross-Point: Should the judgments be reformed to reflect Williams's pleas to the enhancement paragraphs and the trial court's implied findings?

In a cross-point, the State requests that we reform the judgments in both cases to reflect Williams's pleas of not true and the trial court's findings of true on the first enhancement paragraphs. An appellate court can modify incorrect judgments when the evidence necessary to correct a judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.— Dallas 1991, writ ref'd).

The following evidence supports the State's request:

(a) The indictments in both cases include two enhancement paragraphs.

(b) The trial court fully admonished Williams regarding both enhancements.

(c) Williams entered pleas to the first enhancement paragraphs.

(d) The docket sheets reflect that the court found both enhancement paragraphs true.

(e) The State proved the prior convictions alleged in the first enhancement paragraphs, and

(f) Williams admitted to the convictions.

–10–

We conclude that we have the necessary evidence to correct the judgments. Accordingly, we modify the judgments to reflect that Williams pled not true to the first enhancement paragraphs and the trial court found the first enhancement paragraphs true. As modified, we affirm the trial court's judgments.

/s/ Bill Whitehill
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140452F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL WAYNE WILLIAMS, Appellant

No. 05-14-00452-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F-1371062-J.
Opinion delivered by Justice Whitehill. Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that Williams pled "not true" to the first enhancement paragraph and the trial court found the first enhancement paragraph to be "true". As modified, the judgment is **AFFIRMED**.

Judgment entered this 6th day of August, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL WAYNE WILLIAMS,
Appellant

No. 05-14-00453-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F-1356255-J.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that Williams pled "not true" to the first enhancement paragraph and the trial court found the first enhancement paragraph to be "true". As modified, the judgment is **AFFIRMED**.

Judgment entered this 6th day of August, 2015.