**Affirmed and Memorandum Opinion filed September 15, 2016.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-15-00339-CR

## PETE HENGOZA RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 9
Harris County, Texas
Trial Court Cause No. 1978340**

## M E M O R A N D U M   O P I N I O N

Pete Rodriguez appeals his conviction for assault.[1]  Appellant presents three issues.  We affirm.

### Factual and Procedural Background

Appellant was charged by information with the misdemeanor charge of

---

[1] *See* Tex. Penal Code § 22.01(a)(1) (West 2015).

"Assault-Family Member." The information alleged that appellant "unlawfully intentionally and knowingly cause[d] bodily injury to MOLLY MARTINEZ, a member of the Defendant's family, member of the Defendant's household, AND A person with whom the Defendant had a dating relationship . . . by STRIKING THE COMPLAINANT WITH HIS HAND." The following evidence was shown at trial:

On August 10, 2014, complainant Molly Martinez approached Celia De Leon, who was holding a garage sale at her home, and asked to borrow her phone. After complainant placed a phone call, appellant arrived. Appellant and complainant began arguing. De Leon testified that appellant punched complainant—who was five months' pregnant at the time—in the back of the head. Complainant fell to the ground. Appellant left the scene in his car. Complainant called 911 to report the assault.

Officer B. Silva responded to the scene. Silva testified complainant told him that appellant hit her from behind, with a closed fist, and that she fell down on her stomach. Complainant also told Silva that she had a small headache, but no other injuries. Emergency medical personnel arrived on the scene, but complainant refused to be examined or treated.

Officer J. Robles was assigned to investigate the assault. Robles contacted De Leon and presented her with a photo spread lineup. De Leon identified appellant as the person who assaulted complainant.

Complainant testified that she did not remember anything from August 10, 2014. The State introduced the recording of complainant's 911 call in which she told the operator that appellant slapped her. Complaint stated that she said appellant slapped her "out of jealousy" and because she was upset. Complainant confirmed she told police that she had been "slapped and hit," but reiterated that

2

she did so "out of jealousy" because she found out that complainant, who was her boyfriend, had been "talking to an ex." The State introduced EMS reports that indicated complainant was "assaulted by a guy who slapped and hit her." The report also said complainant stated that she was pregnant, but that the assailant "never hit her abdominal area." The report indicated that complainant did not want to be assessed by EMS. On cross-examination, complainant testified that she did not remember EMS responding to her call. When asked if appellant had hurt her in any way, complainant responded that appellant had not touched her or caused her any pain that day. On redirect, complainant refuted Silva's testimony and said that she did not go home with a headache or any pain and that she was "perfectly fine."

The trial court read the charge to the jury, which stated that appellant had been charged with "assault of a family member." The trial court defined "assault" as "intentionally or knowingly caus[ing] bodily injury to another person" and also instructed the jury on the definition of the term "dating relationship." The trial court further instructed the jury that it should convict appellant if it believed, beyond a reasonable doubt, that appellant intentionally or knowingly caused bodily injury to complainant, a person with whom appellant had a dating relationship. Appellant did not object to the charge.

The jury found appellant guilty, and the trial court assessed punishment at one year in the Harris County jail.[2] The judgment indicates that appellant was found guilty of the offense of "ASSAULT-FAMILY MEMBER." Appellant timely filed this appeal and presents three issues: (1) the "assault-family member" designation is improper and the judgment should be reformed to reflect a conviction for "assault"; (2) the trial court erred in instructing the jury on the

---

[2] Appellant pleaded true to an enhancement paragraph alleging a prior conviction for felony evading arrest in a motor vehicle.

definition of "dating relationship"; and (3) a portion of the State's closing argument was improper. We consider appellant's second and third issues before his first issue because they would afford him more relief.

## Analysis

To begin, we provide some statutory context. "Family violence" means:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

Tex. Fam. Code Ann. § 71.004(1) (West 2014 & Supp. 2016). "Family violence" includes "dating violence," as defined by section 71.0021 of the Family Code. *Id.* § 71.004(3) (West 2014 & Supp. 2016).

> "Dating violence" means:

> an act, other than a defensive measure to protect oneself, by an actor that:

> (1) is committed against a victim:

>> (A) with whom the actor has or has had a dating relationship; or

>> (B) because of the victim's or applicant's marriage to or dating relationship with an individual with whom the actor is or has been in a dating relationship or marriage; and

> (2) is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim or applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault.

*Id.* § 71.0021(a) (West 2014).

> "Dating relationship" means:

> a relationship between individuals who have or have had a continuing

4

relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:

> (1) the length of the relationship;
>
> (2) the nature of the relationship; and
>
> (3) the frequency and type of interaction between the persons involved in the relationship.
>
> [] A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a "dating relationship."

Tex. Fam. Code Ann. § 71.0021(b), (c) (West 2014 & Supp. 2016).

"In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." Tex. Code Crim. Proc. art. 42.013 (West 2015) (footnote omitted). The offense of assault is included within Title 5 of the Texas Penal Code. *See* Tex. Penal Code § 22.01(a)(1) (West 2015).

## I.   Jury instruction on "dating relationship"

In his second issue, appellant contends that the trial court erred by instructing the jury on the definition of "dating relationship." Appellant argues that this error constituted a harmful comment on the evidence because it drew the jury's attention to the inflammatory nature of the offense as involving domestic violence.

As an initial matter, appellant failed to preserve this error in the trial court because he did not object to the charge. However, "the failure to preserve jury-charge error is not a bar to appellate review, but rather establishes the degree of harm necessary for reversal." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). When the appellant does not preserve charge error, we will not reverse unless the error, if any, constitutes "egregious harm." *Almanza v. State*,

5

686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Warner*, 245 S.W.3d at 461–62 (internal quotation marks omitted).

Assuming that the trial court's instruction on "dating relationship" was erroneous because it is the trial court which is charged with making any determination of "family violence," *see* Tex. Code Crim. Proc. art. 42.013, which can be based on "dating violence" involving a "dating relationship," *see* Tex. Fam. Code §§ 71.004(3), 71.0021, any error here cannot be said to be egregious. The application paragraph of the charge had the same tendency to draw the jury's attention to the domestic nature of the parties' relationship because it stated that appellant and complainant had a "dating relationship." Moreover, a charge that provides an unnecessary instruction about a finding the trial court is supposed to make instead of the jury, if anything, tends to increase rather than reduce the State's burden and in that way benefits the defendant. *See Watson v. State*, 693 S.W.2d 938, 941–42 (Tex. Crim. App. 1985).[3] Appellant was not egregiously harmed by the trial court's inclusion of the definition of "dating relationship" in the jury charge.

We overrule appellant's second issue.

## II. Improper jury argument

In his third issue, appellant contends that a portion of the State's closing argument was improper. The prosecutor argued:

> He [appellant] can get away with it because we didn't see any

---

[3] *See also Hudgins v. State*, No. 01-10-00425-CR, 2011 WL 4925979, at *5 (Tex. App.— Houston [1st Dist.] Oct. 13, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Watson*, 693 S.W.2d at 941–42).

6

bruising, we didn't see any bleeding and she didn't have to go to the hospital. So we should definitely let him get away with that. Maybe next time we will wait until she goes to the hospital. Maybe next time we will wait until he gets her good and bloody. Maybe next time we will wait until he kills her.

Appellant objected, to which the trial court responded, "She [the prosecutor] can argue general safety of the victim. So that's overruled." Appellant argues that this portion of the argument "urged the jury to convict to prevent speculative injuries in the future," which was improper.

"It is well established that proper jury argument must fall within one of the following categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement." *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) (per curiam). In making a plea for law enforcement, the State may argue the relationship between the jury's verdict and: (1) the deterrence of crime in general, (2) the deterrence of specific crimes, (3) the impact on the community at large, or (4) the impact on narrower segments of the community. *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Borjan*, 787 S.W.2d at 55–56). "Argument exceeding these bounds is improper, and the trial court commits error when it (1) fails to overrule objections to such argument; (2) refuses an instruction to disregard after sustaining an objection to the argument; or (3) fails to grant a mistrial necessitated because of the argument." *Watts v. State*, 371 S.W.3d 448, 457 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

However, an improper argument "will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App.

7

2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* "In most instances, an instruction to disregard the remarks will cure the error." *Id.* The reviewing court employs rule 44.2(b)'s nonconstitutional harm analysis; unless the improper argument affects the defendant's substantial rights, it must be disregarded. Tex. R. App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). "[D]etermining harm under that standard in improper argument cases requires balancing the following three factors: (1) severity of the misconduct (prejudicial effect), (2) curative measures, (3) the certainty of conviction absent the misconduct." *Martinez*, 17 S.W.3d at 692–93 (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999)).

We conclude that the State's argument was either a response to appellant's defensive argument or a plea for law enforcement, or both. Prior to the State's closing, defense counsel argued the jury could not convict appellant in part because there was no evidence that complainant incurred any physical injury or pain. The prosecutor's argument was a direct response to this defensive theory. The argument further asked the jury to enforce the law to ensure that the State would not have to wait to secure a conviction until after appellant had escalated his violent behavior against complainant, causing her more obvious and serious bodily injury, including possibly her death.

Additionally, even if the prosecutor's argument was improper, we conclude that any error was harmless. The balancing factors do not weigh in favor of finding that appellant's substantial rights were harmed. First, the prosecutor's argument does not amount to severe misconduct. It was a small, isolated portion of the State's closing argument. The prosecutor did not repeat the statement after appellant objected to it. *See Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App.

8

2007). Second, although the trial court overruled appellant's objection, it perhaps clarified the reasoning for its ruling somewhat by stating that the prosecutor could argue the general safety of the victim. *See id.* (trial court overruled objection but instructed jury to "recall the testimony"). Moreover, right afterward, the prosecutor explained that what the State wanted was for the jury to "hold this man accountable for what he did to his girlfriend *that day*, a 200-pound man who punches a woman, and you saw how small she was, in the back of the head knowing she was pregnant causing her to fall on her stomach." *See Hawkins v. State*, 135 S.W.3d 72, 85 (Tex. Crim. App. 2004) ("Although a prosecutor's self-corrective action might not carry the same weight as a trial court's instruction to disregard, it is nevertheless a relevant consideration in determining harm and can, in the appropriate circumstances, render an improper comment harmless."). Finally, despite complainant's trial testimony that appellant did not cause her physical pain, Silva testified complainant was crying when she reported that appellant had struck her in the head with his fist, causing her to fall down and hit her pregnant abdomen. Complainant also reported to Silva that she had a headache. Eyewitness De Leon described appellant's punch to complainant's head as "hard" and also testified that complainant fell to the ground crying. Appellant's conviction was relatively certain, even absent the prosecutor's statement.

We overrule appellant's third issue.

## III. Judgment reformation

In his first issue, appellant urges this court to reform the trial court's judgment to reflect that he was convicted of "assault" and not "assault-family member." We agree with appellant that the offense designation of "assault-family member" is not a proper substitute for an affirmative finding of family violence required by article 42.013 of the Texas Code of Criminal Procedure. *See Othman*

9

*v. State*, No. 14-09-00444-CR, 2010 WL 2853888, at *1 (Tex. App.—Houston [14th Dist.] July 22, 2010, no pet.) (mem. op., not designated for publication) (appellant and State agreed that judgment for "aggravated assault-family member" should be reformed to delete "family member" designation and to substitute affirmative trial court finding of family violence where judgment failed to include such finding). However, there is no indication the "family member" designation was intended to be used in that way on appellant's judgment here. To the contrary, the judgment clearly contains the requisite affirmative finding, stating that "The Court FINDS that Defendant was prosecuted for an offense under Title 5 of the Penal Code that involved family violence" under Code of Criminal Procedure article 42.013.

Because appellant has failed to provide any reason requiring reformation of the judgment to excise the "family member" designation, we overrule his first issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    Marc W. Brown
        Justice

Panel consists of Justices Jamison, Donovan, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).