**Affirmed and Memorandum Opinion filed August 12, 2021.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-18-00077-CR

### QASIM SAJIDIN GARDEZI, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1574447**

## MEMORANDUM OPINION[1]

Appellant Qasim Sajidin Gardezi raises four issues to his conviction for the aggravated sexual assault of his wife, LO,[2] resulting in an eighteen-year prison sentence. He raises two evidentiary issues: that the trial court erred in its exclusion of certain testimony and that it erred in admitting evidence over hearsay objections. He also raises two issues about the prosecution's closing arguments: a complaint to

---

[1] Justice Bourliot concurs without opinion.

[2] "LO" are the initials of the complainant used in the indictment.

an overruled objection to a remark made during the guilt-innocence phase, and complaints to denied requests for mistrial during the punishment phase. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and LO met in high school in May 2015. By December 2016 their relationship had seen a rocky course. They were married in June 2016, then separated following an instance of abuse. LO had a protective order granted against appellant, but despite the protective order, the two resumed communications and sexual relations in the latter part of 2016.

In December 2016, appellant discovered LO had been messaging with other men and became angry. At about 1:00 am on December 10, 2016, appellant called LO and asked her to meet him in his car outside her house. She did.

Based on the events that subsequently transpired that night, appellant was charged for aggravated sexual assault. Appellant elected not to testify at his trial, but LO did. Significantly, LO testified in detail about the events that occurred after she got in the car with appellant. According to LO's testimony at trial, the following events occurred:

- Appellant was quiet when she entered the car, and began driving to a friend's house in Harris County that lived near LO.

- When LO got out of the car, the appellant became verbally abusive, pushed LO to the ground, began punching, kicking, and choking her on the ground. The attack caused her to lose consciousness for a period. Although she tried to tell appellant to stop, LO feared that the appellant was going to kill her.

- After dragging LO by the hair in the woods nearby he continued to hit and kick LO while telling her she did not deserve to live and blaming her for speaking with other men. He then dragged LO to the car and began driving. LO tried to

2

exit the vehicle and appellant drove back to the friend's house and told LO that he was going to "end her life." He dragged her to the nearby woods, then back to the car, and told her to get in the trunk. She complied.

- Appellant began driving, occasionally asking if LO was "okay", and eventually arrived at a hotel they had previously been to. When he arrived he ordered LO to get out fast and threatened her not to "try anything." Appellant took a tire iron into the hotel room with him and indicated that he would beat LO with it if she did not do what he said. He left the tire iron on the table in the hotel room where LO could see it.

- After LO told appellant "no" to the prospect of sex, he forced himself upon LO. LO was afraid to tell him to stop as she feared that he would strike her with the tire iron. He forced himself on her a second time while they were at the hotel.

- Eventually, appellant agreed to take LO to the hospital. He instructed her to tell the staff that she was hit by a truck. At the hospital, appellant spoke for LO to the staff, but the staff later separated the appellant from LO. LO told the emergency room staff what had actually happened after the nurse indicated that she did not believe the version about being hit by a truck.

Several medical personnel also testified at trial who described their treatment of LO, and over appellant's hearsay objections, relayed LO's account of the events that transpired that night. The jury also saw photos of LO's physical injuries taken during a medical exam. The photos depict visible injuries on virtually every part of LO's body. The emergency medical technician who attended to LO testified at trial and described LO as looking like "a potato head with hair." LO's face was beaten such that her eyes were almost swollen shut. Appellant was arrested at the hospital after police arrived.

Appellant pleaded "not guilty" to the aggravated sexual assault charge but the jury disagreed. After the jury assessed punishment, the trial court entered judgment convicting appellant for the charged offense and sentencing appellant for

the term assessed by the jury, eighteen years' confinement.

## II. ISSUES AND ANALYSIS

**A. Did appellant preserve his complaint that the trial court erred in refusing to permit appellant to cross-examine the complainant on her alleged bias and motive in connection with an alleged deal pertaining to LO's immigration status?**

Appellant's first complaint is that the trial court erred in refusing to permit appellant to cross-examine the complainant on her alleged bias and motive in connection with her immigration status. We first address the State's contention that appellant failed to preserve error on this issue.

To challenge a ruling that excludes evidence, a party may claim error if it "affects a substantial right of the party" and "informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Tex. R. Evid. 103(a)(2).

At trial, during appellant's counsel's cross-examination of LO, LO testified that she was not a U.S. citizen, was born in Mexico and was undocumented. She also admitted that she discussed this fact with law enforcement. In connection with these facts, the following exchange occurred at trial:

> *Q.* Did Lieutenant -- has Lieutenant Walker discussed citizenship with you?
>
> *A.* Correct.
>
> *Q.* And isn't it true that he has encouraged you to pursue the sexual assault case?
>
> *[Prosecutor]:* Objection, relevance.
>
> *The Court:* Sustained. Next question.
>
> *[Appellant's Trial Counsel]:* Your Honor, goes to bias and motive.
>
> *The Court:* Next question.
>
> *[Appellant's Trial Counsel]:* Pass the witness[.]

4

Appellant does not suggest that an offer of proof was made. Rather, appellant contends that "[t]he bias and motive referred to by the defense [by the above quoted exchange] could well have been an opportunity for [LO] to gain legal status in this country through the Violence Against Women Act (VAWA)."

To preserve the issue, appellant's trial counsel would have had to have LO testify outside the presence of the jury and answer the specific questions the defendant desired to ask (but was not allowed to ask in the presence of the jury), or make an offer of proof of the questions that the appellant would have asked LO and the answers expected had such questioning in the presence of the jury been permitted. *See Mims v. State*, 434 S.W.3d 265, 271-72 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  On this record we do not know what admissible evidence has been excluded. Merely stating that an aim to uncover bias does not inform the court specifically of the excluded content. If as he seems to suggest now, that complainant's testimony provided in exchange for a deal relating to her immigration status, it was incumbent on appellant to show that to the court.   For reasons strategic or otherwise, appellant's attorney choose not to pursue the matter further.

We overrule appellant's first issue.

**B.  Did the trial court commit reversible error when it admitted LO's hearsay statements about appellant and the alleged offense to the emergency medical staff upon arriving at the hospital and to the SANE nurse?**

Appellant's second issue attacks hearsay evidence of the complainant's statements to the sexual assault nurse examiner (SANE) and emergency room care providers found in two sets of medical records that were admitted over appellant's objection under the Rule 803(4) exception to hearsay.

We review a trial court's decision to admit or exclude evidence under an

abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Id*. An abuse of discretion occurs only when the trial court's decision was so clearly erroneous as to lie outside that zone within which reasonable persons might disagree. *Id*.

A hearing outside the presence of the jury was held before the first witness testified where appellant objected to anticipated testimony, including:

- Testimony from the SANE nurse where she read from her records of her interview with LO. The contents generally include LO's account of the events of the night of December 10 from the time she was picked up by appellant to the point when appellant was arrested at the hospital.

- Portions from the emergency room records at East Houston Medical Center, describing LO's historical account of (1) events occurring in the days leading up to December 10 noting that appellant had recently discovered LO had been talking to other girls, (2) original account stating that she was struck by a vehicle contradicted by the explanation that she was compelled by the threat appellant would kill her family, and (3) being kept in a hotel by appellant for 24 hours.

- Portions from the emergency room records at East Houston Medical Center describing LO's statement that she feared for her life.

- Portions from the emergency room records at East Houston Medical Center describing LO's statements regarding her attempt to break up with appellant and his accusation that she had been seeing someone else, that he had taken her to Land Street to talk, that he had taken her to a hotel room and would not let her leave, that they had sex after the beating and that she consented due to being scared and feeling threatened."

We presume, without deciding,[3] that the trial court erred in admitting the medical records and consider whether the error was harmful. An error is harmless if we are reasonably assured that the error did not influence the verdict or had only a slight effect. *See Garcia*, 126 S.W.3d at 927; *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Likewise, the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Shaw*, 329 S.W.3d at 653 (citing *Nino*, 223 S.W.3d at 754); *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

During the trial, the jury heard other evidence including the direct testimony of LO on the same subjects described in the medical records. LO testified in detail and without objection as to the events leading up to her December 10 encounter with appellant, the events of her abuse, her fears throughout, appellant's threats, her hospitalization, and a plan to originally fabricate the cause of her injuries. We conclude that any error in admitting the SANE nurse's testimony of the background, or the objected-to portions of the East Houston medical records was harmless because similar testimony was admitted into evidence without objection. *Lamerand v. State*, 540 S.W.3d 252, 256–57 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Lumsden v. State*, 564 S.W.3d 858, 887–88 (Tex. App.—Fort Worth 2018, pet. ref'd); *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd)(finding harmless despite cumulative nature of the testimony).

---

[3] Doubtless, at least some of the statements were properly admitted under some hearsay exception. For example, LO's statement that she feared for her life yielded a basis for the manner of treating LO in isolation from appellant. *See* Tex. R. Evid. 803(4).

We therefore overrule appellant's second issue.

## C. Did the trial court err when it overruled appellant's objection to the prosecution's remark, "When fear is in the room, consent is not"?

In his third issue, appellant complains that the trial court erred when it overruled appellant's objection to the prosecutor's remark during jury argument that "[i]f fear is in the room, consent is not".

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007); *Cannady v. State,* 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument lies outside these approved areas, it will not result in reversal unless, in light of the record as a whole, it is "extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Counsel's remarks during final argument must be considered in the context in which they appear. *Batalla v. State*, 533 S.W.3d 374, 376 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

The issue came up in the following context of the prosecution's closing arguments:

> The defense brought up consent, whether [LO] consented to the defendant having sex with her. I want you to think back to voir dire when we talked about what consent was. Consent means the complainant agrees, not that she fails to resist. "No" is all she has to say. We don't require them to fight back.
>
> Consent is like a 5-dollar bill. If you beat me up and then I give you a 5-dollar bill does not mean that I consented to give you that 5-dollar bill.
>
> And, lastly, do y'all remember the phrase I wanted y'all to remember?

8

If fear is in the room, consent is not. You heard [LO] tell you, and I'm sure as you were hearing her go through what happened --

*[Appellant's Trial Counsel]:* Objection, Your Honor. Misstatement of the law and the jury charge.

*The Court:* It's overruled. The jury will recall the testimony.

*[Prosecutor]:* You heard [LO] testify about how afraid she was as the defendant was kicking her, hitting her, dragging her, choking her until she passed out. You then heard how afraid she was when she was in the trunk of that car. You then heard about how afraid she was while in that hotel room. You then heard how she was still afraid when she got to the hospital. And you know she was still afraid when she got to the hospital because you heard from Dr. Andrews and Anissa Sinclair who told you how afraid she was.

On this record, we cannot conclude the prosecutor's statements were legally improper. The remark — *If fear is in the room, consent is not* — though referring to the legally operative phrase "without consent" was not advertised to the jury as a statement of law. Though packaged as a one-liner, taken in context of the argument, the trial judge had the discretion to accept the remark as a reasonable deduction of the evidence to consider when analyzing the issue of lack-of-consent.

The instructions that were provided to the jury which accurately track the penal code state that an aggravated sexual assault is without the consent of the complainant if "the defendant compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the defendant has the present ability to execute."

This was a sexual assault case without significant medical or physical evidence of injury specifically caused by the sexual acts described, without significant evidence of resistance or defensive injuries common to sexual assault. Yet, the state was free to pursue the charged offense without such evidence and rely on the law permitting that explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation. *See Edwards v.*

9

*State,* 97 S.W.3d 279, 291 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *see Hernandez v. State,* 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref d) (noting in its sufficiency analysis that "the jury had the ability to observe the witnesses carefully, to hear the fear or violence projected from each witness, and to evaluate the credibility of each witness and the overall sufficiency of the evidence on the issue of consent"). The prosecution used the remark for the jury to consider the consent element in the context of the evidence heard in the case, not the type of evidence they might have expected to hear in a sexual assault case or the evidence that the defense pointed out they did not hear. The jury had heard LO testify that appellant beaten her repeatedly over the course of the night, that he kidnapped her and took her to a hotel where he held her captive, that he kept a tire iron visible to her on a table in the room. She testified that he told her that if she did not comply with his wishes that he would strike her with this deadly weapon. LO testified that she told the appellant "no" to intercourse but was too afraid of the tire iron to tell him to stop. Viewed in its context, we cannot conclude that the trial court erred in overruling appellant's objection to the statement, as the statement was a reasonable deduction from the evidence illustrating LO's fear and lack-of-consent, and an answer to the argument of opposing counsel. *See Carmen v. State*, 358 S.W.3d 285, 300-01 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (finding prosecutors statement that appellant might kill again a reasonable deduction of the evidence).

We therefore overrule appellant's third issue.

### D. Did the trial court err in refusing to grant a mistrial following either of appellant's requests during the punishment phase?

In appellant's fourth issue, he complains of two motions for mistrial denied by the trial court. We review a trial court's denial of a motion for mistrial under the

abuse-of-discretion standard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id*. A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. *See id*.  In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). In most circumstances, an instruction to disregard improper argument is considered a sufficient response by the trial court. *Longoria v. State,* 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)). Thus, a mistrial will only be required in extreme circumstances where the prejudice is incurable. *Hawkins,* 135 S.W.3d at 77.

*First Motion for Mistrial*

During the State's punishment-phase closing argument, the State pointed out that the defendant's counsel's comments should not be construed as a concession of responsibility, that he should not get "any points" for taking responsibility for the offense.  Appellant's trial counsel objected to the statement as an improper comment on appellant's decision not to testify.  The trial court sustained the objection, instructed the jury to disregard the remark, and denied appellant's trial counsel's motion for mistrial.

With respect to this first motion for mistrial, we do not conclude that the trial court abused its discretion in denying the motion.  In our view the comment as was not so improper as to require the trial court to declare a mistrial.

11

Consistent with its trial strategy during guilt-innocence phase, during closing arguments in that phase, appellant's trial counsel conceded the complainant was "badly beaten" and suffered a physical assault, but took exception to the charge for *sexual* assault. The jury may have fairly concluded that the defense conceded assaulting LO (because there was uncontroverted evidence that LO was beaten when she was alone with appellant) but refused to accept responsibility for sexually assaulting LO. The State contends that the prosecutor's punishment-phase argument to not award "points" to defendant for taking responsibility for the beating does not signify a clear intent to comment on appellant's decision not to testify, but rather was a responsive comment on appellant's defensive theory of the case presented during guilt-innocence. The contention is supported by case law. *See Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004)(concluding no error where "nothing in the record suggests that the prosecutor manifestly intended to comment on appellant's failure to testify, and a typical jury would certainly not have naturally and necessarily understood the prosecutor's comment, even with his accompanying gesture, to refer to appellant's failure to testify"); *see Kirvin v. State*, 394 S.W.3d 550, 561 (Tex. App.—Dallas 2011, no pet.) ("The prosecutor asserts the argument that appellant did not take responsibility for his actions was a response to appellant's argument. The record supports the State's position."); *Cf. Randolph v. State*, 353 S.W.3d 887, 893 (Tex. Crim. App. 2011) (finding reference to appellant's refusal to take responsibility for the crime" was a permissible summation of the evidence concerning appellant's alibi testimony). To the extent the trial court took issue with the remark as a comment on appellant's decision not to testify, this was not a blatant case where an instruction to the jury to disregard the comment would not suffice. *See also Moore v. State,* 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999). Thus, the court acted in its sound discretion relying on its instruction to the jury to disregard the comment and denying appellant's motion for

mistrial.

*Second Motion for Mistrial*

Later during the State's punishment-phase closing argument, the State referred to appellant's demeanor as lacking remorse during the punishment-phase:

> *[Prosecutor]:* All you've heard is that it's [LO's] fault. We are not here because of what [LO] did, we're here because of what the defendant did. And he clearly thinks that what he did was not wrong, and one of the most disheartening things was when the defendant got upset when his dad was on the stand. Not once did he show any emotion when we were showing those pictures of what he did to [LO]. Not once did he show any emotion or bat an eye when [LO] was up there talking about the horrible things that he did to her. Not one ounce of emotion. He showed no remorse for what he did to her.
>
> It was only when his father was up there and what's going to happen to him does he start to show any emotion. He doesn't care about [LO], even after the fact. After he did all this to her --

Again, the trial court sustained appellant's trial-counsel's objection (to the comment as remarking on appellant's right not to testify), instructed the jury to disregard the remark, and denied appellant's trial counsel's motion for mistrial.

When the record contains evidence showing the defendant's lack of remorse, a prosecutor's comment on the nontestimonial in-court demeanor of a defendant during trial as lacking remorse may be permissible a proper summation of the evidence. *Davis v. State,* 782 S.W.2d 211, 222–223 (Tex. Crim. App. 1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). But this exception is only triggered when viewed from the standpoint of the jury. If the jury could have reasonably interpreted the statement as a reference to *testimony* presented in the courtroom concerning the defendant's lack of remorse, then the comment is a proper summation of the evidence. *Caldwell v. State,* 818 S.W.2d 790, 800–801 (Tex. Crim. App. 1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d

399 (1992). In this case, the State had presented evidence through the testimony of LO that appellant lacked remorse following his arrest, that he had reached out to LO after he was arrested, pending his trial, that he blamed LO for making him assault her.

In considering the first factor, we conclude that the magnitude of any prejudicial effects of the prosecutor's comments was diminished because the record reflects they were made in conjunction with other proper arguments that allowed the jury to draw a legitimate inference. *See Archie,* 340 S.W.3d at 741 ("Because the improper questions were embedded within other remarks that invited the jury to draw a *legitimate* inference from information contained in the appellant's [out-of-court statement], we think the magnitude of the prejudice was diminished.") (emphasis in original). Immediately preceding the prosecutors' comments about appellant's remorseless demeanor and as part of the same argument, the prosecutor referred to LO's testimony about appellant's blame-shifting and lack of remorse following the assault.

The second factor looks to the measures adopted to cure the misconduct. *Archie,* 340 S.W.3d at 739. Here the court instructed the jury to disregard the statement on demand, and doubled-up by including an instruction about defendant's right not to testify in its charge to the jury. In most circumstances, an instruction to disregard improper argument is considered a sufficient response by the trial court. *Longoria v. State,* 154 S.W.3d at 763–64. This is true even for comments on the defendant's failure to testify, except in the most blatant cases. *Moore v. State,* 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999). We cannot conclude that this case falls into the most-blatant variety; the prosecutor made no explicit reference to appellant's choice not to testify. A reviewing court generally presumes the jury followed the trial court's instruction to disregard. *Gardner v.*

14

*State,* 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). Today, we too presume that any misconduct was cured by the trial court's repeated instructions to the jury to disregard the prosecutor's improper remarks. *See Longoria v. State,* 154 S.W.3d at 763–64.

The third factor, the certainty of the conviction, does not apply in a punishment-phase case. Doubtless, the prosecutor's comment had no effect on the jury's decision to convict. But even if we consider the probable effect on the jury's punishment decision, absent the misconduct—this factor still weighs in favor of the trial court's ruling. The prosecutor's punishment-phase case focused on the impact and damage to LO, and in closing argument asked the jury to put themselves in her shoes at each step of the night of abuse. During the punishment phase the jury also heard other significant evidence, that LO continued to feel threatened by appellant—that he had told others to hurt her for putting him jail. The prosecutor also focused on how LO first blamed herself. The prosecutor asked to sentence appellant for 45 years, but the jury returned a verdict for 18 years. We believe it was unlikely that that any improper comment of appellant's in-court demeanor was so significant a factor in the jury's assessment as to overshadow the other admissible evidence (including LO's own testimony illustrating appellant's lack of remorse or the prosecutor's reference to that testimony). Under these circumstances, we hold that it was well within the trial court's discretion to deny the appellant's motion for mistrial.

We overrule appellant's fourth issue.

## III. Conclusion

Appellant's four issues provide no basis for appellate relief. Accordingly, we affirm the trial court's judgment.

/s/    Randy Wilson
Justice

Panel consists of Justices Jewell, Bourliot and Wilson (Bourliot, J. concurs without opinion).

Do Not Publish — Tex. R. App. P. 47.2(b).